## Goff v. Goff's Executors, et al.

(Decided April 17, 1917.)

### Appeal from Barren Circuit Court.

1. **Husband and Wife—Dower—Conveyance by Husband Prior to Marriage—Fraud.**—The rule that a conveyance by a husband before marriage of the whole or the greater portion of his estate, without the knowledge of the wife, is a fraud on her rights, is subject to the qualification that the husband may, in good faith, make such provision for his children by a former marriage as is reasonable, and no more in amount than a father in his pecuniary condition might naturally be expected to give to his children by way of advancement.

2. **Husband and Wife—Dower—Conveyance by Husband Prior to Marriage—Fraud—Knowledge of Wife—Evidence.**—In an action by a wife to set aside conveyances made by her husband prior to their marriage to his children by a former wife, evidence examined and held to sustain the finding of the chancellor that the conveyances were made without her knowledge or consent.

3. Husband and Wife—Dower—Conveyance by Husband Prior to Marriage—Fraud.—Where a husband had already made provision for two of his sons by a former marriage, a conveyance by him to them on the eve of his marriage to another wife and without her knowledge or consent is a fraud on her marital rights.

4. Husband and Wife—Dower—Conveyance by Husband Prior to Marriage—Fraud.—Where a husband owned property of the value of $21,500.00, acquired largely through means and assistance furnished by a former wife, a conveyance by him to their daughter, pursuant to repeated promises to his former wife, of property worth $7,500.00 or $8,000.00, executed on the eve of his marriage to another, is a reasonable advancement to the daughter and will be upheld, though made without the knowledge or consent of his subsequent wife.

·W. L. PORTER for appellant.

BAIRD & RICHARDSON for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming both on original and cross-appeals.

Upon the death of her husband, James E. Goff, Florence Goff, after renouncing his will, brought this suit against her husband's executors and his children by a former marriage to set aside two conveyances, one to his sons, J. A. Goff and J. W. Goff, and the other to his daughter, Pauline Goff, which she alleged were executed by her husband in fraud of her marital rights. On final hearing, the chancellor set aside the conveyance to the two sons, but held the conveyance to the daughter was valid. From this judgment Florence Goff appeals, and J. A. Goff and J. W. Goff prosecute a cross-appeal.

Briefly stated, the facts are as follows: The marriage of James E. Goff and Florence Goff, which occurred on March 29, 1914, was the third matrimonial venture of each. James E. Goff was divorced from his first wife. He then married again and lived with his second wife until she died about one year before his marriage to Florence Goff. He had one son, Clifton, by his first marriage, and three children, J. A. Goff, J. W. Goff and Pauline Goff, by his second marriage. Florence Goff was first married to Ephraim Love, by whom she had two children, Mary Alice and John Henry. After his death she married Joe Gerald, from whom she was divorced on March 19, 1914. She had no children by Gerald.

Before her marriage to James E. Goff, Florence Goff was the owner of 82 acres of land, known as the "old

Goff homestead." On the day before her marriage to James E. Goff, she conveyed one-half of this land to him for the sum of $3,500.00 and used the purchase money to discharge a debt which she owed the Peoples Bank of Cave City.

Some time prior to his last marriage, James E. Goff had conveyed to J. A. Goff and J. W. Goff the "Branstetter" lands, worth about $16,000.00, on which there was a lien for $7,000.00. Just prior to his marriage, James E. Goff owned an 80-acre tract of land, worth $7,500.00 or $8,000.00, another tract of 60 acres, worth about $6,000.00, and ten-elevenths of a tract of 53 acres, worth about $4,000.00, and, as before stated, he acquired from Florence Goff, on the day before he was married, a one-half interest in her lands for the sum of $3,500.00, thus making him the owner of land of value of about $21,500.00.

About one o'clock on Saturday, March 27, James E. Goff and Florence Goff drove from the country to Cave City. Upon their arrival, Florence Goff proceeded to do some shopping, while James E. Goff went to the Peoples Bank. On reaching the bank, he procured S. D. Caldwell, the president of the bank, to prepare the deed from Florence Goff to him, as well as the deeds from him to his daughter, Pauline Goff, and his two sons, J. A. Goff and J. W. Goff. The deed to his daughter covered the 80-acre tract and the deed to his two sons the 60-acre tract above referred to. The deeds in question were not then put to record, but were taken from James E. Goff's safety vault box and put to record after his death. However, Clifton Goff, the son of James E. Goff by his first marriage, testifies that his father, before his marriage to Florence Goff, delivered the deeds in question to his two sons, J. A. and J. W. Goff, and to his daughter, Pauline Goff. On January 11, 1914, James E. Goff made a will, by which he devised to his two sons, J. A. and J. W. Goff, the 60-acre tract of land theretofore conveyed to them, and to his daughter, Pauline Goff, the 80-acre tract theretofore conveyed to her. Accompanying the devise to his daughter was the provision that if she died before him, the land should go to J. A. and J. W. Goff. He further devised to Florence E. Goff, for and during her lifetime or widowhood, a one-half interest in the tract of land which he purchased from her, and directed that the ten-elevenths interest in the 53 acres be sold and the proceeds divided between J. A., J. W. and Pauline Goff.

While Florence Goff admits that she and her husband discussed their property rights and the rights of their children in each other's property prior to their marriage, she states emphatically that the conveyances made by James E. Goff to his children were without her knowledge or consent. It further appears that the conveyances were made after she and James E. Goff had agreed to marry and on the day before the marriage took place. While Mr. Caldwell, the president, and Mr. Smith, the cashier, of the Peoples Bank, both testify that Florence Goff remained some time in the bank during the afternoon the two deeds were prepared and executed, they do not say that she was present when James E. Goff requested the preparation of the deeds, or that she was informed of their execution, or that there was any discussion of, or reference to, the deeds or any other circumstance sufficient to show that she knew of their execution aside from her mere presence in the bank on the occasion of their execution. William Cross, a tenant on the Goff land, testifies that Florence told him some time after her marriage to James E. Goff that the latter had assigned his life policy away to his children and had given her no part of it, and that he had deeded his land away, or 85 acres. On asking her when he had done that, she said, "reckly his wife died." She further said that Mr. Goff had signed the deeds over and she knew it before she married him. Another tenant by the name of Miller and his wife both say that on one occasion Mrs. Goff complained of being mistreated by her husband. He thereupon advised her to carry a razor for him, and when he jumped at her to "raze him," and if that didn't do to sue him. She replied that there was no use in suing him, as he had nothing. Mrs. Goff says that none of the above conversations took place.

It is insisted on the cross-appeal that the foregoing evidence is sufficient to show that Mrs. Goff knew before her marriage of the execution of the deeds in question. In this connection the following argument is made: Not only was Mr. Goff a successful business man, but Mrs. Goff, because of her prior experience, was well posted on the rights of a married woman. If, as she says, she and Mr. Goff discussed their property rights and the property rights of their children, it was altogether improbable that two people of their situation in life would not have discussed the question of what provision he intended to make for his children. When this circum-

stance is considered in connection·with her presence in the bank on the afternoon the deeds were executed, and in connection with the remarks of her tenants to the effect that she stated to them that she knew of the execution of the deeds by her husband to his children, the chancellor should have held that the conveyances were made with her knowledge. We are not very strongly impressed by the testimony of the tenants. Not only does Mrs. Goff deny the remarks attributed to her, but her statements, even if made at all, were made some time after the marriage and may have referred to the conveyance which James E. Goff had made to his two sons shortly after the death of his second wife. The inference that she must have known of the execution of the two deeds because she and her husband discussed their property rights and the rights of their children in each other's property does not necessarily follow, for they may have discussed those matters and no reference have been made to his purpose to execute the deeds in question. Nor do we find anything in the transaction at the bank from which it can be reasonably inferred that she was apprised of her husband's intention to make the deeds. The evidence merely shows that she was present for quite a while. Clearly, if anything had been said or done to call her attention to the deeds, either Mr. Caldwell or Mr. Smith would have been able to recall it. Considering the transaction in the light of her absolute denial of knowledge or consent, and of the further fact that the deeds in question were not put to record during the lifetime of Mr. Goff and of other circumstances tending to show the secrecy of the transaction, we see no reason to disturb the finding of the chancellor that the deeds in question were executed after Mr. and Mrs. Goff had agreed to marry and without her knowledge or consent.

The rule that a conveyance by a husband before marriage of the whole or the greater portion of his estate, without the knowledge of the wife, is a fraud on her rights, is subject to the qualification that the husband may, in good faith, make such provision for his children by a former marriage as is reasonable, and no more in amount than a father in his pecuniary condition might naturally be expected to give to his children by the way of advancement. Fennessey v. Fennessey, 84 Ky. 519, 2 S. W. 158. It is also the rule that promises of a grantor to his former wife to execute the conveyances and his

continued purpose to do so are circumstances tending to show his good faith.

When we come to consider the conveyance from James E. Goff to his daughter, Pauline, the following facts are disclosed: His former wife owned $700.00 or $800.00, which was used in purchasing land and was the basis of their prosperity. Not only so, but it clearly appears that his former wife, by her economy and thrift and her untiring energy, contributed in no small degree to the accumulation of the estate which he owned at the time of his death. Several witnesses testify that James E. Goff repeatedly promised her to make provision for their daughter Pauline. The property which he conveyed to Pauline was worth about $7,500.00 or $8,000.00. At that time his estate was worth about $21,500.00. Under these circumstances, we conclude that the provision which he made for his daughter was not unreasonable and was properly upheld by the chancellor. In view of the fact that he had made provision for his sons several years before, we conclude that the conveyance to them cannot be placed on the footing of a reasonable advancement, but must be regarded as having been made in fraud of Mrs. Goff's marital rights.

Judgment affirmed both on original and cross-appeals.