BOTSFORD v. BRADFIELD.

1. TRUSTS—PAROL TRUSTS—EVIDENCE—INSTRUCTIONS.

An instruction that leaves the jury to infer that there are circumstances to sustain the testimony of the only witness testifying to the existence of a parol trust, when in fact there are none, and the circumstances are in direct hostility to such a claim, is erroneous.

2. SAME—EVIDENCE—PLEADING AS EVIDENCE—ESTOPPEL.

On the issue of the existence of a parol trust in certain notes and collateral securities, plaintiff's petition in probate court asking the surrender of them, in which she sets up the nature of her claim, may be used as evidence against her, and binds her to the claim there stated.

3. SAME—EVIDENCE—SUFFICIENCY.

In replevin for notes and securities collateral thereto in possession of the payee at the time of her death, brought by the

maker on the theory that decedent had declared a trust therein in plaintiff's favor, evidence examined, and *held*, not sufficient to maintain a suit at law on such theory.

Error to Kent; Wolcott, J.   Submitted June 15, 1905. (Docket No. 18.)   Decided September 20, 1905.

Replevin by Mary L. Botsford against Thomas D. Bradfield and John E. Botsford, executors of the last will and testament of Sarah C. Turner, deceased.   There was judgment for plaintiff, and on petition of Helen M. Burr and others, legatees under said will, they were allowed to intervene and bring error.   Reversed.

This is an action of replevin for two promissory notes executed by plaintiff to the deceased, Sarah C. Turner, and certain certificates of stock assigned therewith, as collateral security.   One note is dated June 15, 1893, and the other September 1, 1892, and they are for $500 each.   Mrs. Turner died December 16, 1901.   The notes and securities collateral thereto were found, with her papers and other evidences of debt, in a box under lock and key.   The box, its contents, and the key were under her exclusive control, and the key was on her person when she became unconscious, just before death.   She had no children.   She left a will bequeathing various sums to some of her relatives, including the plaintiff, to whom she bequeathed, with four other relatives, $3,000 each.   The will was executed in June, 1900.   For other provisions of the will, see *Turner* v. *Burr*, ante, 106.   She left an estate of about $60,000, consisting of about half of houses and lots in the city of Grand Rapids, and half in securities of various kinds.   She was a shrewd, careful, and experienced business woman.

The defendant Botsford is the husband of plaintiff.   The executors inventoried these notes as a part of the estate. Plaintiff made a demand of the defendants, executors, for them, and, upon refusal to deliver them to her, she, on August 8, 1902, presented a sworn petition to the probate

court of the county of Kent, asking for the surrender of
these notes and securities collateral thereto.    Her grounds
for asserting title thereto are there stated as follows:

"Your petitioner further represents that during the
lifetime of the said Sarah C. Turner, and a short time—
that is to say, about 30 days—before her death, she, the
said Sarah C. Turner, in consideration of the natural love
and affection which she entertained for your petitioner,
presented to your petitioner the said principal sum of
$1,000, represented by the said notes, and the said notes,
and promised that she would deliver the same to her, and
was only prevented from making such delivery by the
distance at which your petitioner resided from her, and
the unforeseen sudden attack of disease which deprived
her of her faculties some days previous to her death, and
that previous to such attack it was distinctly understood
and agreed by and between the said Sarah C. Turner, in
her lifetime, and when in full possession of her faculties,
and your petitioner, that said notes and the said securities
should be returned to your petitioner, and should not be
considered as assets of the estate of the said Sarah C.
Turner, and that your petitioner should not pay the
same."

To this petition answer by defendant Bradfield, as ex-
ecutor, was duly filed denying the material facts therein
stated.    The probate court denied the relief asked for,
upon the ground that the court had no jurisdiction to
grant the prayer of the petitioner.    Thereupon she insti-
tuted this suit.

The sole testimony to sustain plaintiff's claim is that of
one witness, Charles M. Turner, who had lived with her
for about a year, under circumstances detailed in *Turner*
v. *Bradfield*, 138 Mich. 507.    She had never known him
until he came to live with her under circumstances de-
tailed in that case.    Mr. Turner's testimony, which alone
serves as a foundation for the verdict of the jury in this
case, is as follows:

" *Q.* I show you these notes, and security attached, and
ask you if you ever saw those before?

"*A.* Yes.    I saw them in the afternoon of December
4th (1901).    My aunt, after we talked awhile, got the tin

box she kept her notes and mortgages in, the same day I returned, and after looking for other papers she took out these notes and securities—I had seen them a number of times before—and she told me that Mrs. Botsford was over just before Thanksgiving, and she thought of letting Mrs. Botsford take the notes and mortgages home with her, but she had kept them on account of collecting the interest, and told me that she wanted Mrs. Botsford to have them, and that she wanted me to see, in case anything happened to her, that Mrs. Botsford got them, as they belonged to Mrs. Botsford, and put them back in the box."

Under a question so leading as to be objectionable, and to which objection was duly made for that reason, the witness testified that Mrs. Turner said:

"She did not want them [the notes] to go into her estate, as they did not belong to her; that she was only holding them for the interest, and that they belonged to Mrs. Botsford."

After the jury were sworn, counsel for defendants asked counsel for plaintiff whether he claimed "this is a gift inter vivos, or a gift causa mortis?

"*Mr. Albers:* If anything, it is a gift causa mortis."

No claim appears to be made that there was a gift inter vivos, and the court directed the jury that there was no gift causa mortis, but submitted the question to the jury whether there was a trust created by parol, and whether Mrs. Turner held these notes and the securities collateral thereto as trustee for the plaintiff.

The jury returned a verdict for the plaintiff.

*Frank L. Carpenter*, for appellants.

*Myron H. Walker*, for appellee.

GRANT, J. (*after stating the facts*).   The court instructed the jury that:

"The evidence in relation to the declaration of trust is given for the most part by Mr. Turner.   The declaration of trust, if one was made by Mrs. Turner in her lifetime,

was made to him; and it is from his evidence, and all the surrounding circumstances, that you must find, if you find a declaration of trust."

The above instruction left the jury to infer that there were circumstances to sustain the testimony of Mr. Turner, and to show that Mrs. Turner held the notes and securities in trust for plaintiff. In fact, there were no such circumstances. On the contrary, all the circumstances refuted any theory of a gift or trust. Mrs. Turner retained during her lifetime the absolute and exclusive control of the notes, and regularly collected the interest thereon. They were kept with her other securities and evidences of property. Plaintiff lived in Port Huron, Mich., and Mrs. Turner in Grand Rapids. Plaintiff visited her, and made a visit at about the time she alleges the promise was made to deliver them to her. Many letters passed between them, and in no one did Mrs. Turner refer to any intention to forgive plaintiff the debt. Plaintiff was not related to her by blood, yet in her will she placed her upon the same basis with her blood relatives. It is to be presumed that Mrs. Turner, a person of long and great business experience, knew what was essential to transfer title to her property, both real and personal. Her will made no mention of these notes. She made a handsome bequest to plaintiff in her will. She made no mention of the matter to her close friend, neighbor, and executor, Dr. Bradfield, or to any other of her friends. She made no indorsement upon the notes. She did not need the interest for her support. All her acts and conduct, from the time the notes were given to the time of her death, were consistent only with her absolute ownership. If there was any question for the jury, they should have been instructed that Mr. Turner's testimony constituted the sole evidence tending to sustain the plaintiff's claim, and that all the circumstances were in direct hostility to the claim.

The plaintiff's petition to the probate court for an order that these securities be delivered up to her by the execu-

tors cannot be used as evidence in her favor, but may be used as evidence against her. She there stated her claim, and it was put in writing by her attorney. That petition does not state a gift causa mortis or inter vivos, or show a trust. It shows only a promise to deliver the notes to her, which it is alleged Mrs. Turner was prevented from doing by the distance between them and an unforeseen attack of disease, and states that it was understood and agreed that the said notes and securities should be returned to the plaintiff. The petition shows only a promise or an executory agreement without consideration and wholly void. It is but just that she should be bound by the record she thus deliberately made.

Under the rulings of the court and the admission of counsel, there was no gift, and plaintiff now seeks to maintain her title to these notes upon the ground that there was an executed trust, which, if sustained, must be based upon the statements which the witness Charles M. Turner testified she made to him. This court said (*Hamilton* v. *Hall's Estate*, 111 Mich. 296):

" It [the declaration of trust] must be such that, from the time it is made, the beneficiary has an enforceable equitable interest in the property, contingent upon nothing except the terms imposed by the terms of the declaration of the trust itself."

If Mrs. Turner in her lifetime had declared her intention to sell and transfer these notes, could plaintiff have maintained an injunction to restrain such action, or, if she had actually sold them, could plaintiff have maintained trover against her for their value, on the strength of the testimony of Mr. Charles M. Turner? What consideration could she have shown for the transaction? There was no act or writing on the part of the deceased to indicate that she intended to part with her property. The declaration on her part that these notes belonged to the plaintiff, and that when she was dead she wanted them surrendered to plaintiff and not made a part of her estate,

would not have been sufficient to pass title or give her any equitable enforceable interest.

It may have been the intention of Mrs. Turner to forgive plaintiff the debt upon her death. It is very probable that she concluded to give her more than this debt, and place her on the same basis with her blood relatives by her will, which she did, and that she therefore left these notes as a part of her estate. However this may be, there is nothing in the record to show an executed trust, such as is essential to maintain a suit at law. The case is ruled in principle by *Trombly* v. *Klersy*, 139 Mich. 209; *Trombly* v. *Klersy*, ante, 73; *Clay* v. *Layton*, 134 Mich. 317.

The court should have directed a verdict for the defendants.

Judgment reversed, and new trial ordered.

CARPENTER, BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.