## SAMUELL v. BROOKS et al.
### (No. 8016.)

(Court of Civil Appeals of Texas. Dallas. Nov. 9, 1918. On Rehearing, Jan. 11, 1919.)

1. TRUSTS ⬤⟾359(2)—ENFORCEMENT—EQUITY JURISDICTION.

Perfect or complete voluntary trusts are enforceable in equity, but executory, incomplete, or promissory trusts are not.

2. TRUSTS ⬤⟾20, 25(1)—CREATION.

Trusts may be created by conveyance or assignment to the donee, or by transfer to third persons upon declared terms, or upon declarations which fasten a beneficial interest, but retain the legal title in the donor; language showing unequivocally an intention on his part to create a trust being essential under the first method, but not under the second and third.

3. TRUSTS ⬤⟾114—CREATION OF TRUST—EXECUTED OR EXECUTORY.

A written declaration by grantor that a deed absolute, already given, was in fact a mortgage, and that the grantee should sell the property, pay off the incumbrances, and set aside $5,000 in trust for grantor's daughter, created a complete and executed trust as to the $5,000 enforceable in equity, although grantor could delay funds becoming available until his death by refusing to execute a deed for the property when sold.

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

---

⬤⟾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Suits by Berta V. Samuell against S. B. Brooks and others, and by S. B. Brooks against Berta V. Samuell and another, consolidated. From an adverse judgment, Berta V. Samuell appeals. Affirmed.

J. G. Matthews, of Greenville, for appellant.

Clark & Sweeton and Geo. S. Perkins, all of Greenville, and W. B. Hamilton, of Dallas, for appellees.

RASBURY, J. Appellant sued appellee S. B. Brooks to recover principal, interest, and attorney's fees upon a past-due promissory note for $5,000, payable to Zora Samuell or order, executed in part payment of 210 acres of land in Hunt county, conveyed by appellant to appellee S. B. Brooks, and to foreclose the vendor's lien retained . in said conveyance to secure payment of same. A. M. Samuell, to whom appellee Brooks subsequently conveyed the land, was made a defendant, as was Zora Samuell, the payee. Against A. M. Samuell a foreclosure of the lien was sought, and against Zora Samuell judgment decreeing she was without interest in the note, etc. In support of her right to maintain suit upon the note, appellant alleged that the note was made payable to Zora Samuell, her daughter, by mistake on her part, and through fraud, accident, or mistake on the part of the said Brooks and A. M. Samuell, in that the said A. M. Samuell, brother of her deceased husband, advised her to sell the land to Brooks, pay existing debts against it, and send him the surplus, with which he would speculate and make her large returns, and for which purpose he could use a note payable to Zora, and that when she concluded the sale to appellee Brooks she delivered the note to Clark & Leddy, attorneys, with instructions to forward same to A. M. Samuell, at Dallas, Tex., which they did immediately, but that A. M. Samuell, instead of using the note for the purpose agreed upon, without the knowledge or consent of appellant, forwarded it to appellee Brooks, who was his agent, and who placed it with the private papers of A. M. Samuell, of. which he had charge, and concerning which appellant knew nothing until she called upon A. M. Samuell and learned that he had refused to use the note, but had delivered same to appellee Brooks as aforesaid. Appellant further alleged that she never intended the note to be a gift to her daughter Zora, and never delivered it to her, or to another for her use, and when she learned the disposition made of it she immediately and continuously demanded possession and payment of same from the appellee Brooks, which he refused, and as a consequence appellant was compelled to employ counsel, to whom said Brooks finally delivered the note.

After appellant filed her suit, but before service of citation was had upon appellee Brooks, he filed a suit in the same court against appellant and her daughter Zora, alleging in substance that he was and always had been willing to pay the note since its maturity, but that both appellant and her daughter Zora claimed the fund. He tendered the principal and interest of the note into court, and prayed that it be adjudged to the real owner, and that he be discharged, with his costs. In answer to appellant's suit, appellee Brooks alleged in substance that appellant's conveyance of the land and the taking of the note payable to her daughter Zora was the culmination of appellant's plan and purpose to set aside to her daughter Zora the sum of $5,000 in trust, to be administered by appellee Brooks, who was directed to pay the income derived therefrom to said Zora for her maintenance and education, but that, due to the controversy relating to the ownership of the fund, he desired to resign. his trust and as maker of the note to pay same, but could not pay it to Zora, because of her minority, and could not pay it to appellant, because it was by its terms payable to Zora. Prayer was that appellant and her daughter be required to litigate the ownership of the note and fund, that he be relieved from further duties as trustee, and for his costs.

At this point in the controversy, on motion of appellee Brooks, the causes were consolidated. After consolidation appellant amended her pleading to meet the new phase of the proceeding, but made no substantial change in her cause of action. Subsequently Zora Samuell, by her guardian ad litem, answered the suit of appellant, and after adopting certain pleadings of appellee Brooks, among them the allegations that it was appellant's purpose to create a trust fund for her use and benefit by the sale of the land, pleaded that the note was her individual property, and that she owned, by inheritance from her father, an undivided one-sixth interest in the land in part payment of which said note was given, of which appellant was cognizant at the time she conveyed same. Appellee A. M. Samuell, in effect, adopted the pleading of appellee Brooks in the suit he filed, and in the answer to the suit brought by appellant.

By supplemental petition appellant replied to the pleadings of the parties just recited, raising issues of law and fact, and specially pleading other facts. It is not necessary, however, to recite the pleading in order to understandingly discuss the issues presented in the brief. Jury was waived, and trial was had before the court, who adjudged that appellee Zora Samuell was the legal and equitable owner and holder of the note, and entitled to the fund tendered into court against all parties to the suit, and that ap-

pellant was entitled to nothing by her suit, and that all parties, as to her suit, go thence and recover costs, etc. From such judgment this appeal was taken.

Upon request of the appellant the court filed conclusions of fact and law. The facts found are, in substance, these: On March 10, 1915, appellant, Mrs. Berta V. Samuell was indebted to First National Bank of Greenville and its cashier, appellee S. B. Brooks, in an amount aggregating $5,534.80. On that date Mrs. Samuell conveyed to Brooks 210 acres of land in Hunt county by general warranty deed absolute in form, but intended as security for her indebtedness. Thereafter, on October 12, 1915, Mrs. Samuell signed, acknowledged, and delivered to Brooks another instrument, in the nature of a declaration, which recited in substance that the conveyance of March 10, 1915, to Brooks, while absolute in form, was intended to secure Brooks and the bank in the sum .of $5,534.80; also that against said land so conveyed there was a prior lien securing the British American Mortgage Company in payment of a debt of $8,000; and that it was her desire to sell the land and pay the debts enumerated, and, in addition, to create, out of the proceeds of the sale, a trust fund of $5,000 for the benefit of her daughter Zora. For the purposes enumerated she authorized and empowered Brooks to speedily sell the land for not less than $100 an acre, and with the proceeds, first, pay all indebtedness due British American Mortgage Company, or permit the purchaser to assume such indebtedness; second, pay the debt due by her to the First National Bank of Greenville and Brooks, including any additional sums advanced; third, to retain, as trustee for Zora Samuell, $5,000, which should be invested and reinvested in her behalf, paying to her, for her maintenance and education, the income from said fund as it accrued, whether annually, semiannually, or monthly, said trust to continue for ——— years, after which the entire fund was to be paid to Zora; fourth, the remainder of the proceeds from said sale, if any, to be paid over to said Mrs. Berta V. Samuell. Thereafter, on November 29, 1915, appellant, Mrs. Berta V. Samuell, signed, acknowledged, and delivered to appellee Brooks a general warranty deed to the 210 acres of land referred to in the former instruments. The consideration was $21,000, paid by Brooks assuming the $8,000 due British American Mortgage Company, $8,000 in cash, and appellee Brooks' note for $5,000, payable to Zora Samuell, and due January 1, 1916, being the note in controversy. The deed to Brooks referred to the former conveyance to Brooks, and declared it was but a mortgage to secure the debts enumerated in the trust declaration subsequently recorded.

Prior to signing and recording the declaration of October 12, 1915, it was the desire of appellant, Mrs. Samuell, to sell the land and pay the incumbrances thereon, and appellee Brooks, at the request of A. M. Samuell, suggested to her that it would be advisable to sell the land and place $5,000 of the proceeds in trust for her daughter Zora, and Mrs. Samuell made the declaration for the purpose of creating a fund of $5,000 in trust for her daughter. After the delivery of the trust declaration, and before delivery of the deed of November 29, 1915, Mrs. Samuell was informed by her son that appellee A. M. Samuell would accept a note payable to Zora and taken in part payment of said land, and use it as collateral in speculating in cotton futures for the benefit of Mrs. Samuell, and immediately upon delivery of the last deed to appellee Brooks Mrs. Samuell directed that it be sent to appellee A. M. Samuell, which was done. Samuell immediately returned it to appellee Brooks. When the note was forwarded to A. M. Samuell, appellant intended that he should use it as collateral in speculating for her and her children, and did not intend that it should be returned or delivered to Zora Samuell, or appellee Brooks for her, and understood from what her son had told her that it would be used to speculate on, although appellee A. M. Samuell had not so agreed. Nor did appellee A. M. Samuell advise appellant that he had returned it to appellee Brooks until some time afterward, when she called upon him at Dallas, at which time she immediately demanded the note, which appellee Brooks refused to deliver. There was no agreement between appellee A. M. Samuell and appellee Brooks, at the time the latter purchased the land, that the former would take the land from Brooks at the price he paid for it, although Brooks did so convey the land to Samuell. Samuell did advise Brooks to buy the land, and guaranteed him against loss in the transaction. At the time Mrs. Samuell delivered the deed to Brooks and accepted his note in part payment thereof, Zora Samuell was attending school at Dallas and living with her uncle, A. M. Samuell, as she also was at the time of the trial of the case.

The trial judge reached the conclusion, in effect, that the instrument of October 12, 1915, which may be designated a declaration of trust, created or set aside a fund of $5,000 for the benefit of appellee Zora Samuell, the right to the use of which vested when appellant, Berta V. Samuell, signed, acknowledged, and delivered the deed of November 29, 1915, to appellee Brooks. Appellant challenges the correctness of the court's conclusion in the respect stated, and since the issue so raised is, in our opinion, controlling, we will consider it first.

[1, 2] Appellant contends that the declaration is incomplete, executory, and at most a promise to create a trust, for the reason that it does not convey the land to Brooks in trust for Zora, nor does it empower him to convey the land and apply the proceeds as

directed, but merely authorizes him to sell, which as a consequence leaves the trust revocable, and that appellant did revoke same when she executed the deed. The foregoing, while in our own language, fairly and in substance states the attitude of counsel for appellant, Mrs. Samuell.

In determining the issue thus presented, we omit discussion of any elements of the subject of trusts other than the precise question involved, and will attempt even in what we do say to confine ourselves to the application of the rule to the particular facts disclosed by the record in the present case. Using in substance the language of another:

The general rule is that perfect or complete voluntary trusts are, and executory, incomplete, or promissory trusts are not, enforceable in equity. Trusts may be created in real or personal property by conveyance or assignment to the donee, or by such transfer to third persons upon declared terms, or by declaration which fastens a beneficial interest in or upon property and retains the legal title in the donor. If the donor adopts either the "second or third mode, he need not use any technical words or language in express terms creating or declaring a trust; but he must employ language which shows unequivocally an intention on his part to create a trust in a third person or to declare a trust in himself." Pomeroy, Eq. Juris. § 997.

"Where the donor has the legal title, and the property is of such a nature that a legal estate can be transferred—that is, is land, chattels, money, and some species of things in action—an imperfect conveyance or assignment, which does not pass the legal title, will not be aided or enforced in equity. But if the property is not of such a nature that the legal title can be transferred, then, if nothing more remains to be done or can be done by the grantor or donor—if, as far as he is concerned, the conveyance or assignment is complete, and he has done all that is necessary to be done, having regard to the nature of the property—the conveyance or assignment will be effectual in equity, and will be enforced on behalf of the donee." Pomeroy, Eq. Juris. § 998.

[3] What, then, is the status of the declaration of appellant of October 12, 1915, when applied to the very clear and uninvolved rules announced by Mr. Pomeroy? We conclude that said instrument alone and within itself is a complete or executed trust enforceable in equity. The instrument declares the donor to be the owner of land which is incumbered with certain mortgages, and that it is her desire to sell the land for a fixed sum, and out of said sum pay the incumbrances and set aside to her daughter Zora $5,000 as a trust fund to be administered by the trustee named. She directs the trustee to sell the land at the figure named, and when sold to apply the proceeds as directed, any balance to be paid to her. The trust does not come within the class enumerated in the first rule announced, since it is clear, and may not be denied, that there was no purpose on the part of Mrs. Samuell to convey any interest in the land. If that had been her purpose, it is equally clear that the declaration would have been insufficient in that respect, since by that rule, when such is the purpose, the donor must do "all that is necessary, according to the nature of the property, to pass and vest the title," which would have been by deed executed in the manner required by statute. Obviously Mrs. Samuell's purpose at that time was to set aside $5,000 out of the proceeds derived from the sale of the land, when sold, to be held in trust for the maintenance and education of her daughter. To import less to the language would be to declare the instrument meaningless and to assert that she had no purpose in view.

It may be conceded that the fund could not become available until Mrs. Samuell actually sold and conveyed the land. That would not affect or change the fact, however, that she did set aside the sum stipulated. No more certainty would have been added to what she actually did declare and do, if she had gone further and added that the use of the fund was available only upon her conveyance of the land. Such was obviously true whatever was said. She was not transferring an interest in lands, and hence deed was not necessary to complete the trust. She did not have the fund in possession; hence assignment or corporeal delivery for the same reason was unnecessary and could not be made. Nothing in fact remained for her to do to complete the transaction, for, as we have shown, when the property or thing sought to be bestowed is of such nature that legal title cannot be passed or the thing actually delivered, "the conveyance or assignment is complete." It must only appear that there is an unequivocal intention on the part of the donor to make the bestowal; and in that connection technical words or language expressly creating the trust are not necessary. And while the beneficial use of the fund may have been postponed by the refusal of Mrs. Samuell to convey to Brooks, or at all, whenever she did sell or upon her death, equity would enforce same, unless, of course, the proceeds from the sale of the property were insufficient to pay the incumbrances, or the trust was in some manner defeated, as by taking a negotiable promissory note, similar to the one in controversy, in the name of Mrs. Samuell or another, and its acquisition for value by one without notice of the trust, or by unlawfully using the money for another purpose. However, those are conditions which never arose, for appellant did sell the land and voluntarily set aside the $5,000, by taking the note in the name of her daughter. The fact that she intended to use the note or fund unlawfully, by which we mean the fund was not hers to use, is of no consequence in determining to whom same lawfully belonged. We concede and believe that she intended, and in utmost good faith believed she had the right, to divert the fund,

and that it would have been wisely invested for all; yet such facts are without force to change the result of her declaration or the status of the fund when the land was sold.

There are several other issues presented in the appellant's brief, including one of whether the declaration constituted a gift inter vivos, whether there was a delivery of the note to Zora, so as to pass ownership out of Mrs. Samuell, and the question of attorney's fees in the event Mrs. Samuell was the true owner of the note. In our opinion such issues are never reached under our holding that the declaration of trust was a complete conveyance of fund, and for that reason will not be discussed.

The judgment is affirmed.

### On Rehearing.

Counsel for appellees courteously insists, on motion for rehearing that it is not clear from our opinion which of the several instruments discussed therein and disclosed by the evidence we hold creates the trust. As is shown by our opinion, we base our conclusion upon the declaration of October 12, 1915. It is true that the subsequent conveyance of the land made the trust fund available to the donee, but that fact did not, in our opinion, constitute the instrument an executory trust. It is said that—

"A trust is executory when some further act is directed to be done in order to complete and perfect the trust intended to be created. A misconception should here be guarded against. When by the terms of the trust as created, and for the purpose of carying it into effect, the trustee is directed to do some act with the property, the trust is not thereby executory. Giving property to a trustee upon trust to convey to a person, or upon trust to convey it upon certain specified trusts, does not render the trust executory. * * * If the scheme has been imperfectly declared at the outset," and the donor has imposed upon the trustee or the court the duty of effectuating it, "the trust is called executory. All trusts are in a sense executory, because a trust cannot be executed, except by conveyance, and therefore there is something always to be done." The test is: Has the donor "left it to the court to make out from general expressions what his intention is, or has he so defined that intention that you have nothing to do but to take 'the limitations he has given you, and to convert them into legal estates?" Pom. Eq. Juris. § 1001.

In our opinion the declaration of October 12, 1915, clearly set aside to the donee the sum stipulated to be paid when the land was sold, and hence when the land was sold the amount was converted thereby into a legal estate. Of course, as said in the original opinion, the trust or estate could have been defeated, but that fact does not, in our opinion, destroy what would otherwise constitute a complete trust.

The motion for rehearing is overruled.