PERRY P. COON, TRUSTEE, PLAINTIFF, v. CLAUDE W. STANLEY ET AL., APPELLANTS, BESSIE FINNEY STANLEY, RESPONDENT.—94 S. W. (2d) 96.

Kansas City Court of Appeals. April 6, 1936.

*John E. Powell, Hubert Fuller* and *George E. Woodruff* for appellants.

*Platt Hubbell* for respondent.

SPERRY, C.—Joseph W. Stanley, on October 23, 1930, delivered to Perry P. Coon certain notes and other securities contained in envelopes marked with the names of certain of his nieces and nephews, telling Coon that he was leaving on a trip and if he died or did not return Coon was to call in the parties named on the envelopes and deliver same to them; that they knew about it. Some of said notes bore the indorsement on the back thereof: "In the event of my death this is the property of ———— (naming indorsee) J. W. Stanley." Stanley then and there indorsed one of said notes as follows: "In the event of my death this is to be the property of ————(name of indorsee) Joseph W. Stanley." Identical indorsements were entered on the back of the others in Coon's handwriting at the direction of Stanley, and signed by Stanley, excepting as to some coupon bonds which were not indorsed but only left in the envelopes bearing the names of certain of respondents. Stanley told Coon to collect interest and payments on principal and credit to his general account, which was done and reported to Stanley from time to time. Stanley checked out said funds from time to time thereafter for whatever purposes he saw fit. Stanley died May 29, 1931, without ever reclaiming said securities, and in April term, 1933, Coon filed petition in circuit court asking that the court declare said securities to be held in trust for the named beneficiaries, and for instruction as to disposition of same.

Respondent, Bessie Finney Stanley, widow of Joseph Stanley, filed interpleader claiming an undivided half interest, denying the trust, and praying for appointment of a receiver to take charge of and collect and dispose of said property.

Appellants, nieces and nephews of deceased, who had no children,

filed separate interpleaders claiming respectively under an alleged oral trust.

Upon these issues the court heard the evidence and after trial rendered judgment finding there was no trust, allowing widow an undivided half interest in said property, and appointing a receiver to take charge, collect and dispose of same. From this judgment the appeal is prosecuted.

In addition to the facts stated in the first paragraph hereof, the evidence discloses that Stanley married respondent in December, 1930, and there is no evidence of any prior engagement or that any act done by Stanley was with a view to defraud respondent of her inchoate dower rights in the property. There was some evidence that Stanley had delivered envelopes to one of respondents for safe keeping on two different occasions but what said envelopes actually contained is not disclosed. There was evidence that deceased had told some of respondents upon various occasions that he held certain notes for them and that, when he died, they were to become the property of respondents; that all he wanted was the interest during his life. Aside from Coon, and appellants, the only other witnesses who testified as to declarations of deceased were the following:

Ballew, Mrs. Davis and Ray Davis, stated that one of the notes, signed by him, bore a similar indorsement as that in evidence two or three years before, and that he had renewed the note from time to time, and it always bore that indorsement.

Mrs. Davis said that the note of herself and husband, one of those in controversy, was similarly indorsed several years before death of Stanley; that deceased told her that if anything happened to him to see Claude (one of appellants); that the interest was all he wanted; that the note belonged to Claude, which latter statement apparently was a conclusion on her part.

Ray Davis, testifying about the same note, said deceased said at the conversations related by Mrs. Davis: "If I die the note is Claude's." On cross-examination he testified that deceased said: "If I happen to die this note is Claude's."

Deceased made a will, in one clause of which he mentioned a number of envelopes kept in his safe and that they were to be delivered to parties named thereon and not to be inventoried as a part of the estate, but there is no showing as to what was in the envelopes. Certain account books of deceased were mentioned but the evidence is unsatisfactory as to what the accounts showed with reference to the securities in issue or their ownership. There was evidence that deceased studied and underlined passages in Harris Banking Co. v. Miller, 190 Mo. 640, wherein oral trusts are discussed.

1. Appellants complain of the order of the court appointing a receiver and say that since the court held against them the securities

should have been delivered to executors. There is no showing that executors had not been discharged by probate court before the trial, which occurred more than a year after appointment of executors. But aside from this, appellants failed to reserve the point in their motion for new trial or in arrest and the record fails to show that the trial court's attention was ever called to the point. Therefore, this court will not consider it. [Whitehead v. Bank, 56 S. W. 833, 1. c. 835; Greer v. Carpenter, 323 Mo. 878, 195 S. W. (2d) 1046.]

2. Complaint is made regarding the trial court's declaration of law denominated No. 1, wherein reference was made to the effect that if deceased did the acts alleged with a view to defraud respondent of her dower rights that such acts were fraudulent and void in law. Such a declaration of law is not supported by any evidence. Even so, if the judgment is for the right party, it will not be reversed even though the reason upon which it is based is not approved. [Harris Banking Co. v. Miller, 190 Mo., 1. c. 672.]

Declarations of law have no place in equity proceedings. [Moller-Vandenboom Lumber Co. v. Boudreau, 855 S. W. (2d) 141.]

3. This brings us to the main question. Both parties agree that this is either an oral trust or it is an ineffectual attempted testamentary disposition of property. Such is the correct theory of the case.

A trust is simply a common ordinary perfected gift of the equitable title of property. It differs from a gift *inter vivos* only in that the one conveys to the beneficiary the legal as well as the equitable title and the other conveys the equitable title only. But in both cases the equitable title must pass immediately and unconditionally. It has been held that the transfer of title must be so complete that donee might maintain trover for the conversion of the property. [Botsford v. Burr, 141 Mich. 370; Bank v. McKenna, 163 Mo. App. 1. c. 258.]

We do not mean to say that the *beneficial use* of the equitable title may not be postponed, and trustor may retain the control in himself of the legal title, reserving the right to use the income for life, to reinvest, to revoke *pro tanto* or *in toto*, and may even reserve the right to use so much of the principal as may be needed during his lifetime. Our courts have so held repeatedly and it is the universal rule. [Harris Banking Co. v. Miller, 190 Mo. 640; In re Soulard's Estate, 141 Mo. 642; Bank v. McKenna, 168 Mo. App. 254; Davis v. Rossi, 34 S. W. (2d) 9.] Nevertheless, he who creates a trust estate creates an estate no longer his own. [Bath Sav. Inst. v. Hathorn, 32 L. R. A. 377; Van Studdiford v. Randolph, 49 S. W. (2d) 250.]

4. A trust in personalty can be created orally. But proof of its elements must be strong, cogent and convincing, more than merely by a preponderance of the evidence. It must be clear, unequivocal,

and convincing to a judicial mind. [Foley v. Harrison, 233 Mo. 460; Van Studdiford v. Randolph, 49 S. W. (2d) 1. c. 255.] By that we do not mean to say that any particular form of words need be used; but the intent will be gathered from the words and acts of the parties, before, at the time of, and after the transaction. [Platt v. Huegel, 32 S. W. (2d) 605; Frank v. Heiman, 258 S. W. 1003.]

The question here is whether title to the property was passed at the time. Here the words used in the indorsement were: "In the event of my death this is the property of ————." The other form of indorsement was: "In the event of my death this is *to be* the property of ————." Both forms were used by deceased in this transaction. In telling witnesses about the notes he said: "If I die." The latter terms were used in the case of Bank v. McKenna, 168 Mo. App. 254, and Judge ELLISON said: "Without doubt deceased considered the money in his power and ownership if he should conclude to use it before he died." We think the expression in that case to be virtually of the same meaning as the indorsement herein used.

In the case of Van Studdiford v. Randolph, supra, the instrument contained the terms: "In the event of the death of the undersigned," and the court held the terms to refer not to the time at which beneficiaries would come into the enjoyment, but rather that it postponed the time of passing of the equitable title until death; this despite the fact that the same instrument referred to "the trustee," a term always understood to refer to a trust.

It cannot be said that since he was in ill health he used the expression in contemplation of death for in the same transaction he gave instructions for the future management of his business including the property involved, thus making provisions for life.

His past acts in handling the instruments, having received payments on the principal of same, including the Davis note, said principal payment having been received after the indorsement was written thereon and before delivery to Coon, and no showing of reinvestment for the benefit of the trust, shows that deceased treated the property as his absolutely so long as he lived. After delivering same to Coon more than $1500 in principal was collected, together with interest and all credited to his general account and used by deceased for indiscriminate purposes. His acts before and after the transaction rebut any theory that he considered the title vested in appellants. We hold the facts and circumstances, the words both written and oral, when all considered together, to show no passing of title *in praesenti.*

Respondents explain use of principal payments on notes as *pro tanto* revocation of the trust. The right to revoke the trust is impliedly reserved but deceased on the contrary, according to respondents, stated all he wanted was the interest. The reserved right to use such of the principal as he might need during his life is inconsistent

with deceased's declarations, if by his declaration he sought to create a trust. He did not fully state the terms thereof. Furthermore, the record discloses his ownership of large amounts of corporate and bank stock as well as realty, worth many times the value of the property here involved, all unaffected by any kind of trust declaration. He did not need to use this property. He had ample income for his needs without it and many thousands of dollars of other property.

But his action in so doing is wholly consistent with a view that it was his property to do with as he saw fit during his lifetime. By so doing he thus construed his own acts, deeds, words and conditional indorsements.

In this respect the case differs from Harris Banking Co. v. Miller, 190 Mo. 640, where there was an unconditional assignment of the deposit slip accompanied by an offer to deliver to donee; and from Mendenhall v. Pearce, 20 S. W. (2d) 670, a typical trust of real property. In all such cases an unequivocal, unconditional and immediate transfer of the equitable title was held to have been effected and the proof thereof clear, cogent and convincing. The same is true of Starks v. Lincoln, 291 S. W. 132, cited by appellants, where the court said the indorsement "without recourse on me," and other facts, indicated: "An *absolute,* irrevocable *gift immediately* effective and having no reference to the future and in no sense conditional upon the fatal termination of donor's illness."

The judgment of the circuit court is affirmed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment of the circuit court is affirmed. All concur.