**BUTLER STATE BANK, a Corporation, Plaintiff-Respondent,**

v.

**Gertrude V. DUNCAN, Defendant-Respondent,**

and

**Walter Wilson, Administrator of the Estate of Lener J. Wilson, Deceased, Defendant-Appellant.**

**No. 22791.**

Kansas City Court of Appeals.

Missouri.

Jan. 12, 1959.

Robert L. Spurrier, Butler, for appellant.

Belisle & McNabb, Butler, for respondent.

SPERRY, Commissioner.

Butler State Bank, plaintiff, filed its bill of interpleader praying adjudication of the ownership of $5,414.30 held on deposit by it, to which rival claims were made by Gertrude V. Duncan and Walter Wilson, Administrator of the Estate of Lener J. Wilson, deceased. The bill was sustained and the fund, less $150 allowance to plaintiff, was paid over to the Clerk of the Court. The issues as between Gertrude V. Duncan and Administrator Walter Wilson were tried to the court. From a judgment in favor of Gertrude V. Duncan, hereafter referred to as respondent, plaintiff and administrator Walter Wilson, hereafter denominated appellant, appealed.

The facts are not in dispute. Deceased and her daughter, respondent, together with a son, Carson T. Wilson, visited plaintiff bank on July 19, 1952, and deceased deposited in savings account $8,000. Deceased had a check payable to her, in the amount of $13,500. The above deposit represented a portion of the proceeds of that check. The deposit was in a savings account, as follows: Lener J. Wilson, payable on death to Gertrude V. Duncan. The signature card was made to Lener J. Wilson, payable on death to Gertrude V. Duncan and, at the bottom of said card, appears the following, in the handwriting of deceased: "Lener J. Wilson pable on deth": and "Gertrude V. Duncan", written by respondent. On that day deceased also deposited $1,000 to an account in the name of Carson T. Wilson or Gertrude Duncan, jointly. Deceased also maintained a checking account in the bank, established April 28, 1951, in her name "or" Carson T. Wilson, jointly. The signature card was to either deceased or her son, and signed by both. She deposited $5,433.50 of the proceeds of the $13,500 in that account on July 19, 1952. On August 4, 1952, deceased signed a "transfer" check in the amount of $3,139.70, drawn on the savings account, and deposited same in the joint account with her son, Carson T. Wilson. Other deposits were made in the savings account

and the balance in that account remained at $5,100.50 at her death, which, with accruals, amounted to $5,414.30 when this action was instituted. The instruments above referred to, together with deposit slips, bank ledger sheets and checks reflecting the various transactions, constituted all of the documentary evidence in the case. These documents and the oral testimony accompanying their introduction into evidence, spell out the following: On July 19, 1952, deceased, accompanied by her son and daughter, Carson T. Wilson and Gertrude V. Duncan, took to the bank a check for $13,500 from the National Farm Loan Association, and a check (not previously mentioned herein but shown on the deposit slip of that date) from H. H. Page, in the amount of $958.20. These checks appear on the deposit slip in the account of "Lener J. Wilson or Carson T. Wilson", and they total $14,458.20. From that amount was deducted, as shown on the deposit slip. "Less to savings $9000.00" and "Less cash $25.00", leaving a deposit of $5,433.20 in the account of deceased "or" Carson T. Wilson. Of the balance of the funds, $1,000 was deposited in an account established on that date for "Carson T. Wilson or Gertrude Duncan", and $8,000 was deposited in the account here in litigation. Less than a month later deceased withdrew $3,139.50 from that account and placed it in the account of "Lener J. Wilson or Carson T. Wilson". On the back of the signature card for this latter account there appears printed words as follows: "Joint account— payable to either or survivor" and underneath, the signature "Lener Wilson and Carson T. Wilson."

Carson T. Wilson testified to the effect that on July 19, 1952, Gertrude Duncan and he accompanied his mother to the bank; that she had a check for $13,500 and one for $958.20 for deposit; that he was present when she deposited $5,433.20 thereof in a joint account of witness and deceased; that he was also present when the account in controversy was established and witnessed the preparation of the deposit slip and

the signature card; that he witnessed his mother and sister sign the latter instrument. He also testified that he heard deceased tell respondent, in Mr. Page's office, just before the deposit was made, that "she is depositing $8000.00 in this bank for her when she is done with it, or before she is done with it if she happens to need it, * * * if Gertrude happens to need it, * * * that she could draw on it if she needed it;" that deceased gave the pass book of this account to witness to keep; that he kept same in his safety box until deceased instructed him, prior to her death, to deliver it to respondent. The witness was asked regarding statements made by deceased to witness at the time she instructed him to deliver the pass book to respondent, but objection was sustained. Respondent then offered to prove by the witness that, if permitted to do so, he would testify to the effect that deceased said that respondent was then in hospital or would, shortly thereafter, need hospitalization, and would need to withdraw funds from the account.

The Court, in ruling for respondent held, in effect, that deceased intended to and did establish a trust fund with power reserved to her to use and consume all of it during her lifetime, but the remainder, if any, was to go to respondent at donor's death.

■ Appellant contends that it was error to permit the introduction of parol evidence to contradict the terms of a written instrument, that is, the deposit slip and signature card. The deposit slip contained the words: "Payable on death to Gertrude V. Duncan, and deceased signed the signature card "Lener J. Wilson pable on deth". Underneath her signature appears that of respondent. "Whatever the inference may be, as to the intention of the depositor arising from the form of the deposit, evidence of his words and conduct is admissible to show what his actual intention was". Scott on Trusts, Second Edition, Vol. 1, Page 478; 32 C.J.S. Evidence § 959, p. 891.

The Court did not err in permitting such testimony.

■ Considering all that deceased did, all she said, and all of the surrounding circumstances, was there a valid enforceable trust created?

■ No formal or technical words are necessary in order to create a trust. 89 C.J.S. Trusts § 54, pp. 809, 810; In re Estate of Soulard, 141 Mo. 642, 644, 43 S.W. 617; Coon v. Stanley, 230 Mo.App. 524, 94 S.W.2d 96, 98. We think there is no question but that deceased intended to create a fund from which she could withdraw any or all of it, as she might need it; that she intended that respondent should also have the absolute right to use any or all of it, as she might need it; and that she intended that whatever was left in the bank's custody on her death should be the absolute property of respondent. Her actions and her statements, made to respondent in the presence of her son, Carson T. Wilson, leave no room for doubt as to her intentions.

What deceased actually did was to create what was known in New York as a tentative trust. Washington University Law Quarterly, Vol. 26, Pages 286–287–288, Trusts. The comment there found is centered around the decision in In re Geel's Estate, Mo.App., 143 S.W.2d 327 (St.L.). In that case a trust was declared and upheld where the bank deposit was a joint one. It was held that depositor did not intend to give the other named depositor the right to withdraw during donor's lifetime but reserved the right, herself, to use any or all of the principal, if she wished; that what remained after her death was held to be in trust for the beneficiary. The Court cited Coon v. Stanley, 230 Mo.App. 524, 94 S.W. 2d 96 (K.C.), and Harris Banking Co. v. Miller, 190 Mo. 640, 89 S.W. 629, 1 L.R.A., N.S., 790 where the Court cited Davis v. Ney, 125 Mass. 590, in support of this rule. The Courts have been a long time developing this particular theory. Its adoption has been slow, but the trend of the decisions has been such that its eventual adoption was almost inevitable. It would require a lengthy discussion to take up all of the various decisions and reconcile them with this view, and probably would serve no useful purpose. This Court, and the St. Louis Court, have both spoken on the subject, and the Supreme Court has commented approvingly on the above mentioned Massachusetts decision so-holding.

Appellant cites Bank of Perryville v. Kutz, Mo.App., 276 S.W.2d 593 (St.L.) and relies strongly thereon. That case was submitted on an agreed statement of facts, to wit: Henry Kutz had a general checking account in the bank. On or about April 14, 1952, the cashier, at the direction of Kutz, inserted upon its records of the Kutz deposits, the following statement: "Payable on death to Tony Kohlfield", after which Kutz advised Kohlfield of such facts and, fourteen days later, Kutz died intestate, without having changed the designation on the bank records. In ruling that a trust was not created the court said, L.C. 595: "There is nothing to show his (Kutz') *intent* or *purpose*, or that he considered the fund disposed of". (Emphasis ours.)

That case, on the facts, is to be distinguished from the case at bar. Here, we have before us not only the bank deposit slip, but we have the sworn testimony of the son of deceased who recounted, in detail, what deceased said regarding her intention with reference to the bank deposit, in the office of Mr. Page, where she received the checks from which the deposit came. In addition to her statements, made at that time, she delivered the pass book into the custody of her son and, thereafter, instructed him to deliver it to respondent, saying at the time that respondent might need to make withdrawals for hospitalization expenses.

In the Kutz case the Court said there is *nothing* to show intent or purpose; here, the intent and purpose of deceased is shown beyond question—(strong, cogent,

and convincing, more than merely by a preponderance of the evidence. Coon v. Stanley, supra, 94 S.W.2d 98).

The judgment should be affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court. All concur.