Elizabeth C. **UNTHANK** and F. M. Butler, Independent Executors of the Estate of C. P. Craft, Deceased, Petitioners,

v.

Iva **RIPPSTEIN**, Respondent.

No. A–10288.

Supreme Court of Texas.

Dec. 31, 1964.

Morehead, Sharp, Boyd & Tisdel, Plainview, for petitioners.

Stone & Stone and John C. Chambers, Amarillo, for respondent.

STEAKLEY, Justice.

Three days before his death C. P. Craft penned a lengthy personal letter to Mrs. Iva Rippstein. The letter was not written in terms of his anticipated early death; in fact, Craft spoke in the letter of his plans to go to the Mayo Clinic at a later date. The portion of the letter at issue reads as follows:

"Used most of yesterday and day before to 'round up' my financial

affairs, and to be sure I knew just where I stood before I made the statement that I would send you $200.00 cash the first week of each month for the next 5 years, ~~provided I live that long~~, also to send you $200.00 cash for Sept. 1960 and thereafter send that amount in cash the first week of the following months of 1960, October, November and December."; opposite which in the margin there was written:

"I have stricken out the words 'provided I live that long' and hereby and herewith bind my estate to make the $200.00 monthly payments provided for on this Page One of this letter of 9–17–60."

Mrs. Rippstein, Respondent here, first sought, unsuccessfully, to probate the writing as a codicil to the will of Craft. The Court of Civil Appeals [1] held that the writing was not a testamentary instrument which was subject to probate. We refused the application of Mrs. Rippstein for writ of error with the notation "no reversible error." See Rule 483, Texas Rules of Civil Procedure.

The present suit was filed by Mrs. Rippstein against the executors of the estate of Craft, Petitioners here, for judgment in the amount of the monthly installments which had matured, and for declaratory judgment adjudicating the liability of the executors to pay future installments as they mature. The trial court granted the motion of the executors for summary judgment. The Court of Civil Appeals reversed and rendered judgment for Mrs. Rippstein [2], holding that the writing in question established a voluntary trust under which Craft bound his property to the extent of the promised payments; and that upon his death his legal heirs held the legal title for the benefit of Mrs. Rippstein to that portion of the estate required to make the promised monthly payments.

In her reply to the application for writ of error Mrs. Rippstein states that the sole question before us is whether the marginal notation constitutes "a declaration of trust whereby [Craft] agrees to thenceforth hold his estate in trust for the explicit purpose of making the payments." She argues that Craft imposed the obligation for the payment of the monies upon all of his property as if he had said "I henceforth hold my estate in trust for [such] purpose." She recognizes that under her position Craft became subject to the Texas Trust Act in the management of his property. Collaterally, however, Mrs. Rippstein takes the position that it being determinable by mathematical computation that less than ten per cent of the property owned by Craft at the time he wrote the letter would be required to discharge the monthly payments, the "remaining ninety per cent remained in Mr. Craft to do with as he would." Her theory is that that portion of Craft's property not exhausted in meeting his declared purpose would revert to him by way of a resulting trust *eo instante* with the legal and equitable title to such surplus merging in him.

■ These arguments in behalf of Mrs. Rippstein are indeed ingenious and resourceful, but in our opinion there is not sufficient certainty in the language of the marginal notation upon the basis of which a court of equity can declare a trust to exist which is subject to enforcement in such manner. The uncertainties with respect to the intention of Craft and with respect to the subject of the trust are apparent. The language of the notation cannot be expanded to show an intention on the part of Craft to place his property in trust with the result that his exercise of further dominion thereover would be wrongful except in a fiduciary capacity as trustee, and under which Craft would be subject to suit for conversion at the hands of Mrs. Rippstein if he spent or disposed of his property

1. In re Craft Estate, 358 S.W.2d 732 (C.C.A.1962, writ ref. n. r. e.).

2. Rippstein v. Unthank, 380 S.W.2d 155.

in a manner which would defeat his statement in the notation that a monthly payment of $200.00 in cash would be sent her the first week of each month. It is manifest that Craft did not expressly declare that all of his property, or any specific portion of the assets which he owned at such time, would constitute the corpus or *res* of a trust for the benefit of Mrs. Rippstein; and inferences may not be drawn from the language used sufficient for a holding to such effect to rest in implication. The conclusion is compelled that the most that Craft did was to express an intention to make monthly gifts to Mrs. Rippstein accompanied by an ineffectual attempt to bind his estate *in futuro*; the writing was no more than a promise to make similar gifts in the future and as such is unenforceable. The promise to give cannot be tortured into a trust declaration under which Craft while living, and as trustee, and his estate after his death, were under a legally enforceable obligation to pay Mrs. Rippstein the sum of $200.00 monthly for the five-year period.

■ The controlling tests were stated by this Court in McMurray v. Stanley, 69 Tex. 227, 6 S.W. 412 (1887):

"It has been often said that, in cases of this kind, three things must be shown before a court of equity will declare a trust to exist, and enforce it: *First,* that the words of the testator ought to be construed as imperative, and hence imposing on the trustee an obligation; *secondly,* that the subject to which the obligation relates must be certain; *thirdly,* that the person intended to be the beneficiary under the trust be also certain."

In Fleck v. Baldwin, 141 Tex. 340, 172 S.W.2d 975 (1943), it was said:

"While the transactions under review are in the form of voluntary trusts, they are governed in general by the rules applicable to gifts. The principal difference between such a trust and a gift lies in the fact that in the case of a gift the thing given passes to the donee, while in the case of a voluntary trust only the equitable or beneficial title passes to the cestui qui trust. In each case the equitable title must pass immediately and unconditionally and the transfer thereof must be so complete that the donee might maintain an action for the conversion of the property. Absent a completed gift of the equitable title, no trust is created, for an imperfect gift will not be enforced as a trust merely because of its imperfection. A gift cannot be made to take effect in the future, for the reason that a promise to give is without consideration. Neither can the donor retain the right to use and enjoy the property during his lifetime and direct its disposition after his death in any manner other than by the making of a will. Unless Mrs. Baldwin, therefore, intended at the very time she opened these several accounts and purchased these various stock certificates to pass the equitable title thereto so that the exercise by her of any further dominion over same, except in the fiduciary capacity of trustee, would be wrongful, then no gifts were made or trusts created by such transactions. Each of the foregoing statements is supported by one or more of the following authorities: Chevallier v. Wilson, 1 Tex. 161; Harmon v. Schmitz, Tex. Com.App., 39 S.W.2d 587; Samuell v. Brooks, Tex.Civ.App., 207 S.W. 626, error refused; Peterson v. Weiner, Tex.Civ.App., 71 S.W.2d 544, error refused; Benavides v. Laredo National Bank, Tex.Civ.App., 91 S.W.2d 372; Chaison v. Chaison, Tex.Civ.App., 154 S.W.2d 961, error refused for want of merit; Botsford v. Burr, 141 Mich. 370, 104 N.W. 620; Coon v. Stanley, 230 Mo.App. 524, 94 S.W.2d 96; In re Allshouse's Estate, 304 Pa. 481, 156 A. 69, 96 A.L.R. 379; Frazier v. Hudson, 279 Ky. 334, 130 S.W.2d 809, 123 A.L.R. 1331."

Mrs. Rippstein relies principally on three decisions in support of her theory that the ten per cent of Craft's property required to discharge the monthly payments can be carved out and made to constitute the subject of the trust: McMurray v. Stanley, supra; Estes v. Estes, 267 S.W. 709 (Tex. Com.App.1924); and Monday v. Vance, 92 Tex. 428, 49 S.W. 516 (1899). In Monday v. Vance the husband and wife deeded property in trust for the permanent support of the wife and the children, and for the education of the children. The deed did not prescribe how the property should devolve after the trust was executed, but there was no uncertainty, regarding the establishment of the trust itself. It was held that the effect of the deed was merely to carve out of the estate in the property the usufructuary interest for the support of the wife and the maintenance and education of the children, and to leave what remained unaffected by the conveyance. Estes v. Estes considered a will which created a life estate in B. T. Estes with a vested remainder in fee simple in Bennie Estes; and which also impressed the income from the property in the hands of B. T. Estes with an active trust in favor of Bennie. As relevant here, the court cited what it termed the "universal rule that, in the absence of express terms defining the estate conferred upon the trustee, the trustee takes exactly that quantity of interest which the purposes of the trust requires, and no more." But there was no uncertainty regarding the intention of the testatrix. In McMurray v. Stanley this court considered a will under which the testatrix gave all of her property to her husband with full power of disposition, but directed that "at his death, should he have any of said property still remaining in his possession not disposed of or used by him, that the same shall be given by him" to her nieces. It was held that the intention to create a trust was manifested by the whole instrument, and that the property remaining in the possession of the husband at the time

of his death could be shown with as much certainty as any other fact. Here, again, the court was enforcing clear intention, and in so doing it was held that the subject to which the trust attached was sufficiently certain.

We also note that Mrs. Rippstein presented the alternative point in the Court of Civil Appeals (which that court did not reach) that the marginal notation was an instrument in writing which imports consideration; and that she was entitled to summary judgment against the estate of Craft for the monthly payments since the executors of the estate wholly failed to meet their burden of proving a want of consideration. This alternative position was also asserted by counsel for Mrs. Rippstein in oral argument before this Court.

The common law rule was stated by this Court in Jones v. Holliday, 11 Tex. 412 (1854):

> "A consideration is essential to the validity of a simple contract, whether it be verbal or in writing. This rule applies to all contracts not under seal, with the exception of bills of exchange and negotiable notes, after they had been negotiated and passed into the hands of an innocent indorsee. * * * In contracts under seal a consideration is implied, in the solemnity of the instrument."

In 1858 the Legislature enacted what became Article 7093 of the 1911 codification providing as follows: "Every *contract in writing* [3] hereafter made shall be held to import a consideration in the same manner and as fully as sealed instruments have heretofore done." It was said by this Court in Harris v. Cato, 26 Tex. 338 (1862), that "The object of this law was to dispense with a mere formality in the execution of *a certain class of contracts*. And as by the common law *these instruments* when under seal imported a consideration, it was pro-

---

3. All italics are added.

vided, by the clause of the sentence under consideration, that the same effect should be given *to them* when subsequently executed without a scroll or seal."

Article 7093 of the 1911 codification was omitted in the 1925 codification. Article 27 of the 1925 codification, however, read, and still reads, in part, as follows: "No private seal or scroll shall be required in this State on any written instrument except such as are made by corporations." In an opinion adopted by this Court in Wright v. Robert & St. John Motor Co., 127 Tex. 278, 58 S.W.2d 67 (1933), it was stated that Article 27 of the 1925 codification included the substance of Articles 7092 and 7093 of the 1911 codification. It was further held that:

"If the seal was required under the common law on simple *contracts* such as this to import a consideration, and the statute now provides that no seal shall be required, it follows that the only effect the statute can possibly have *on such a contract* is to dispense with the common-law rule requiring the seal in order to import a consideration."

It is apparent that Article 27 cannot be held to provide that all written instruments import a consideration, regardless of the kind or type of writing the instrument may purport to be. The marginal notation under consideration here does not purport to be a contract, or to embody a bilateral agreement between Craft and Mrs. Rippstein, or to be the result of a meeting of their minds, or to possess the element of mutuality of obligation. A contractual obligation to pay the monthly payments cannot be imposed against the estate of Craft on the theory that the executors thereof were under the burden in this proceeding, which they did not discharge, of alleging and proving a want of consideration.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.