## Payne v. Tatem et al.

(Decided December 2, 1930.)

W. B. HANSFORD and J. B. PAXTON for appellant.

K. S. ALCORN and C. C. WILLIAMS for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming on cross-appeal and reversing on original appeal.

David C. Payne, a resident of Lincoln county, died intestate on October 1, 1927, survived by his widow, Mollie D. Payne, who was his second wife, and several children, the issue of a former marriage. His widow qualified as his administratrix and brought this suit as administratrix to settle the estate, and in her own right to recover dower in a tract of land which she alleged that her husband owned in fee simple at the time of his death, and set aside a transfer of personal property which she claimed he had made to his daughter, Jennie Tatem, for her use, or for the use of all of his children, without her knowledge or consent, and for the fraudulent purpose of defeating her marital rights. The children filed an answer joining issue as to the transfer of the personal property, denying that David C. Payne was the owner in fee simple of the land in which his widow claimed dower, and alleging in the second paragraph that he had an estate for life in only three-fifths of the land. A demurrer was sustained to the second paragraph of the answer, and the widow was awarded dower in the property. On final hearing the chancellor refused to set aside the transfer of the personal property, and, from that portion of the judgment, the appeal is prosecuted, while the correctness of the ruling sustaining the demurrer to the second paragraph of the answer is challenged by cross-appeal.

With respect to the transfer of the personal property, the facts are these: About two years before his

death Mr. Payne, who was then seventy-four years of age, gave to his daughter, Jennie Tatem, a certificate of deposit for $4,000. One of the witnesses says that Mr. Payne told him that he had given the money to Mrs. Tatem for distribution, but several of the witnesses say that the gift was made to Mrs. Tatem alone, and not for the benefit of the other children. In addition to the $4,000, Mr. Payne had on deposit at the time of the transfer a balance of $666. At the time of his death Mr. Payne owned personal property of the value of $1,538.26, and was indebted in the sum of $631.-12. It further appears that, on the death of Mr. Payne's first wife, Mrs. Tatem became the head of the household, reared, and occupied the place of a mother, to the other children; that Mr. Payne was, not only very devoted to her, but looked up to her and consulted her about all his affairs; that when in Crab Orchard he regularly took his dinners with her and sometimes his breakfast; that after his second marriage he and his second wife frequently visited Mrs. Tatem for weeks at a time. The rule in this state is that, while the wife cannot complain of reasonable gifts or advancements by a husband to his children by a former marriage, yet, if the gifts constitute the principal part of the husband's estate and be made without the wife's knowledge, a presumption of fraud arises, and it rests upon the beneficiaries to explain away that presumption; and in judging of the good faith of the transaction the court must look to the condition of the parties and all the attending circumstances. Murray v. Murray, 90 Ky. 1, 13 S. W. 244, 11 Ky. Law Rep. 815, 8 L. R. A. 95. The presumption of fraud may be overcome by showing that the provision made by the husband for his children by a former marriage was reasonable, and no more in amount than a father in his pecuniary condition might naturally be expected to give to his children by way of advancement. Fennessey v. Fennessey, 84 Ky. 519, 2 S. W. 158, 8 Ky. Law Rep. 477, 4 Am. St. Rep. 210. Another circumstance tending to show that the husband acted in good faith is the fact that the former wife assisted in the creation of the husband's estate, and that he repeatedly promised her to make provision for her children out of the estate. Goff v. Goff's Ex'rs et al., 175 Ky. 75, 193 S. W. 1009. In view of the fact that Mr. Payne had only $4,660 at the time of the gift of $4,000 to Mrs. Tatem, there is no

escape from the conclusion that the burden was on her to overcome the presumption of fraud. There was no showing that the $4,000 came from the estate of Mr. Payne's first wife, or that the gift was made in pursuance of a promise which she exacted of him. In view of the size of the gift compared with the entire personal estate, and of the fact that Mr. Payne had several children, that Mrs. Tatem's husband had considerable property and she was perhaps better off than the rest of the children, it hardly can be said either that the gift was intended as an advancement, or that it was a reasonable advancement in the circumstances presented. We conclude that the mere fact that Mr. Payne was unusually devoted to his daughter, that he took a large number of meals at her home, and that he and his wife frequently visited her, is not sufficient to overcome the presumption of fraud arising from the size of the gift without the wife's knowledge, considered in the light of the entire estate, and all the attending circumstances. We are therefore of the opinion that the chancellor should have adjudged the gift invalid to the extent of the wife's distributive share thereof.

It remains to determine the extent of Mr. Payne's interest in the real estate in which Mrs. Payne was adjudged dower. It appears that prior to the spring of 1903 Mrs. Bettie P. Payne, Mr. Payne's first wife, owned a two-fifths interest in the property, while the other three-fifths were owned by Daniel Slaughter, Hazel Slaughter, and Robert Slaughter. Mrs. Bettie P. Payne brought suit against the other joint owners for a sale of the land and a division of the proceeds. At the June, 1903, term of the Lincoln circuit court the property was ordered sold, and Bettie P. Payne became the purchaser. At the November, 1903, term of the court the sale was confirmed, and an order was entered "directing the commissioner to execute a deed of conveyance of said property to said Bettie P. Payne for life, and at her death to her husband, David Payne." The caption of the deed executed by the commissioner pursuant to this order reads: "This indenture made and entered into this 21st day of November, 1903, between Daniel Slaughter, Hazel Slaughter, and Robert Slaughter, by R. C. Warren, Commissioner of the said court, of the first part, and Bettie P. Payne for life and David Payne at her death of the second part." The granting clause reads: "The parties of the first part

by R. C. Warren, Commissioner, aforesaid, have sold and by writing do convey to said parties of the second part and . . . heirs and assigns forever." After the description of the land we find the following: "This deed of conveyance being made to Bettie P. Payne for life and at her . . . to her husband and their heirs." The habendum reads: "To have and to hold the said property, together with the rights and privileges and appurtenances thereto belonging unto the parties of the second part, and their heirs and assigns forever."

It is first insisted that the court was without jurisdiction to direct the conveyance to be made to David C. Payne because there was no transfer or assignment of the bid of Bettie P. Payne, the purchaser. In the circumstances presented we do not regard the absence of an assignment or transfer as fatal to the jurisdiction of the court. The court had jurisdiction of the parties and of the subject-matter. Bettie P. Payne was the plaintiff in the action, and the suit was filed and conducted by attorneys presumably employed and selected by her. The record discloses that an order was entered directing the property to be conveyed to Mrs. Payne for life, with remainder to her husband, David C. Payne. It will be presumed that this order, which clearly was sufficient to authorize the action of the court, was entered with her knowledge and consent. As she never attacked the order during her lifetime it is now too late for those claiming through her to raise the question.

But the further point is made that the deed purports to convey only on behalf of Daniel, Hazel and Robert Slaughter, who owned a three-fifths interest in the property, and that the terms employed in the various clauses, considered in the light of the fact that the entire purchase money was paid by Bettie P. Payne are susceptible of no other construction than that David C. Payne was to have an estate for life only. What construction we would be forced to adopt if we considered only the caption and the granting and habendum clauses of the deed, we need not stop to inquire. It is sufficient to say that, taken alone, the task of reconciling them is not an easy one. The situation, however, is not so difficult when we take into consideration the fact that the commissioner, as recited in the deed, had been directed by an order of court to convey the property "to said Bettie P. Payne for life and at her death to her husband, David C. Payne." In the circumstances it will

be conclusively presumed that the commissioner intended to comply with the order of court, and the provisions of the deed, though somewhat conflicting and confusing when standing alone, will be given the effect intended, and construed as conveying to David C. Payne a vested remainder in fee simple in and to the entire property.

The judgment is affirmed on the cross-appeal, and reversed on original appeal, and cause remanded for further proceedings consistent with this opinion.