HARRIS, APPELLANT, *v.* HARRIS ET AL., APPELLEES.

(No. 3740—Decided December 28, 1945.)

*Messrs. Brouse, McDowell, May & Bierce,* for appellant.

*Messrs. Foust & Holden,* for appellees Alice Harris, Stanley B. Harris, a minor, and W. E. Holden, guardian *ad litem.*

*Messrs. Wise, Roetzel & Maxon,* for appellees First-Central Trust Company, trustee, Dudley W. Maxon, executor, and Dudley W. Maxon, trustee.

*Messrs. Slabaugh, Guinther, Jeter & Pflueger,* for appellee Austin D. Harris.

*Messrs. Carson & Roderick,* for appellee Mary Dailey.

DOYLE, J. This cause involves the right of a widow to a distributive share under the laws of descent and distribution in personal property conveyed by a husband in a trust *inter vivos* to a designated trustee, and the remainder at his death to persons other than his wife of 39 years marital status, in which the husband had retained certain rights and powers, including the

income thereof and the power of control, modification and revocation.

Stanley W. Harris died in 1942, leaving a wife (the petitioner herein) surviving. There were no children. His will, executed in 1940, directed an annual income of $5,000 to be paid to his wife out of the net income of a testamentary trust fund consisting of the residue of his estate. The corpus of the fund was to remain intact, and upon the death of the wife was to be "divided and paid in equal proportions, share and share alike," to a nephew and a niece.

Shortly after the death of the testator, it became apparent that the income from this testamentary trust would permit payment of but a small fraction of the designated annual income. The widow then elected to take under the laws of descent and distribution and forego the provisions of the will, as was her legal right under the provisions of Section 10504-55, General Code.

In addition to a share of the property of which the testator died actually seized, it is the claim of the widow that she is also entitled to a distributive share in about $75,000 worth of property or its cash equivalent in the hands of and in the name of a trustee, appointed through the medium of a trust *inter vivos* executed in 1939 and prior to the time of the execution of his will.

Under the provisions of this trust, the settlor assigned and conveyed 100 shares of the capital stock of the McNeil Machine & Engineering Company to D. W. Maxon as trustee, and powers were given the trustee to enter into an agreement with all of the other stockholders of the company (four in number), whereby all of the stock in the company would be assigned to the five holders of the legal title thereof (the trustee and the four other stockholders), who would act as trustees, with a single certificate evidencing such

ownership. The indenture further provided for the voting of the stock by the trustees and for the remitting to the settlor of all dividends paid on his proportionate share, as well as the right to call upon the said settlor for any contributions required.

Directions were given for the receipt of the settlor's stock, together with any monies, securities or other property payable, by the trustee—Maxon—in the event of the termination of the trust otherwise than by the settlor's death. Upon the death of the settlor, the trustee was given various directions, among which was a direction to pay one Mary Dailey $100 a month for the remainder of her life, the amount to be taken "first from income and then from principal, if the income is insufficient," and after the death of Mary Dailey to give the balance of the estate to a nephew and a niece, with specific directions for the distributon of the property in the event of the death of either one or the other.

The instrument then continued with the following reservation of power to the settlor:

"At any time or times during my life to revoke the settlement hereby evidenced, either in whole or in part, as well as the right to modify in any respects the terms of such settlement. Any modification or revocation, however, shall be by written instrument signed by me and delivered to the trustee, and to whatever extent this settlement may be so revoked, the trustee shall thereupon surrender and deliver to me such portion or all of the property as may be the subject of such revocation."

In conformity to the terms of the foregoing trust, a second agreement was entered into between Maxon, the trustee, and the other stockholders, each of whom owned the same number of shares as did Harris—to wit, 100. Under this agreement each placed in trust

his shares, and one certificate for all outstanding stock (500 shares) was issued to them jointly. The stockholders became trustees of all of the stock. This indenture further provided for the termination of the trust established upon the death of any one of the trustees or the death of Stanley Harris.

This agreement, with certain modifications, remained in effect until the death of Harris, and Harris acted until his death as the president of the company and received a substantial salary in payment for his services.

While there are many paragraphs devoted to the duties of Maxon, the trustee, in connection with the affairs of the settlor, the record shows that Harris, the settlor, engaged in the business of operating the company, along with the other stockholders, and that the activities of his trustee were of a minor character.

Although the foregoing recitation of facts is but a short and incomplete summary, we believe it is sufficient for the purposes of this opinion, and attention is now directed to the question of the wife's right, if any, to participate, under the laws of descent and distribution, in the approximate $75,000 worth of property now in the hands of the trustee Maxon and held by him for distribution under the indentures heretofore mentioned.

The trial court held that the wife was not entitled to participate in the corpus of the trust, and this appeal on questions of law and fact was then perfected.

It is a rule of law of long standing that a husband during his lifetime has the right to entirely dispose of his personal estate without the consent of his wife. And it may be accomplished through the medium of a trust *inter vivos* as well as by an outright gift. It arises as a consequence of that absolute power which a person possesses over his own personal property and

the accompanying right or power of disposition, unless the rights of creditors intervene.

What effect, if any, upon this right does a reserved right to all income, as well as a reserved unrestricted right of revocation or modification of the entire trust, have?

The Ohio statute (Section 8617, General Code) provides:

"All deeds of gifts and conveyance of real or personal property made in trust for the exclusive use of the person or persons making the same shall be void, and of no effect, but the creator of a trust may reserve to himself any use of power, beneficial or in trust, which he might lawfully grant to another, including the power to alter, amend or revoke such trust, and such trust shall be valid as to all persons, except that any beneficial interest reserved to such creator shall be subject to be reached by the creditors of such creator, and except that where the creator of such trust reserves to himself for his own benefit a power of revocation, a court of equity, at the suit of any creditor or creditors of the creator, may compel the exercise of such power of revocation so reserved, to the same extent and under the same conditions that such creator could have exercised the same."

The Supreme Court of Ohio, in its latest interpretation of the effect of this statute upon a wife's interest, states:

"1. A husband may dispose of his personal property during his lifetime without the consent of his wife; but a husband may not bar his widow of her right to a distributive share of any property which he owns and of which he retains the right of disposition and control up to the time of his death.

"2. Section 8617, General Code, which provides that a revocable and amendable living trust 'shall be

valid as to all persons' except creditors, does not deprive the settlor of all dominion over the trust *res* so that a widow electing to take under the statute of descent and distribution is barred from claiming a distributive share of the property in such trust.

"3. The transfer of property to a trustee under an agreement whereby the settlor reserves to himself the income during his life with the right to amend or revoke, is valid by virtue of Section 8617, General Code, but under such a trust agreement settlor does not part absolutely with the dominion of such property and his widow electing to take under the statute of descent and distribution may assert her right to a distributive share of the property in such trust at settlor's death." *Bolles* v. *Toledo Trust Co., Exr.,* 144 Ohio St., 195, 58 N. E. (2d), 381, 157 A. L. R., 1164.

The rationale of this decision is that, in this state, a husband cannot, through the medium of a trust *inter vivos,* cut off his wife from participating, under the laws of descent and distribution, in personal property transferred to a trustee under an indenture of trust in which he reserves to himself the income from the property and the right to control, amend or revoke it; and that, insofar as his widow's rights are drawn into issue, the settlor has not parted with such dominion over his property as to preclude her from claiming and receiving a distributive share out of the corpus of the trust.

In addition to being ruled in this decision by the sufficiently parallel *Bolles case, supra,* and the propositions of law therein set forth in the syllabus, and independently of the arguments advanced by Judge Turner in support of the decision in that case, the members of this court are of the opinion that there is a public policy involved in protecting a wife's interest in personal property over which a husband has retained sub-

stantial dominion and control, the legal title to which has been conveyed by a trust *inter vivos*. (The term "public policy" is used in the sense of that which harmonizes with the morals of the time and with the established interests of society.)

The wife's interest is not an interest in property which a husband possesses during his lifetime, but, as against *cestuis que trustent*, is a paramount right, growing out of the marital contract, which a wife possesses, that her husband shall not deprive himself of ownership of his personal property so as to shear her of the benefits thereof upon his death, while at the same time securing to himself, during his lifetime, the enjoyment of the income, dominion and the right of control; and, under circumstances where this right comes into conflict with the provisions of a trust of the kind presented in this case, the provisions of the trust must yield to the right of the wife to participate in the property in the trust; as to the remainder of the trust property, it will be administered under the terms of the indenture.

We do not deem it necessary to analyze or attempt to reconcile various decisions of the Supreme Court of this state on the subject involved. For the benefit of anyone interested in such analysis, we cite some of them as follows:

*Worthington, Admr.*, v. *Redkey, Exr.*, 86 Ohio St., 128, 99 N. E., 211; *Union Trust Co.* v. *Hawkins, Admr.*, 121 Ohio St., 159, 167 N. E., 389, 73 A. L. R., 190; *Cleveland Trust Co., Trustee*, v. *White*, 134 Ohio St., 1, 15 N. E. (2d), 627, 118 A. L. R., 475; *Schofield, Trustee*, v. *Cleveland Trust Co.*, 135 Ohio St., 328, 21 N. E. (2d), 119; *Woodside Co. of Nevada* v. *Narten*, 138 Ohio St., 469, 35 N. E. (2d), 777; *Central Trust Co.* v. *Watt*, 139 Ohio St., 50, 38 N. E. (2d), 185; *Bolles* v. *Toledo Trust Co., Exr., supra.*

See, also, *Hayes, Admx.,* v. *Lindquist,* 22 Ohio App., 58, 153 N. E., 269; 16 University of Cincinnati Law Review, 194; 27 Cornell Law Quarterly, 411.

*Decree accordingly.*

WASHBURN, P. J., and STEVENS, J., concur.