In the Matter of the ESTATE OF Ida R. HUTCHINS, Deceased.

FIRST NATIONAL BANK OF KANSAS CITY, Executor of the Estate of Ida R. Hutchins, Deceased, et al., Respondents,

v.

Milton CARPENTER, Director of Revenue, State of Missouri, Appellant.

No. 46915.

Supreme Court of Missouri,

Division No. 1.

April 13, 1959.

Motion for Rehearing or to Transfer to Court En Banc Denied May 11, 1959.

John M. Dalton, Atty. Gen., William H. Bates, Sp. Asst. Atty. Gen., for appellant.

Menefee D. Blackwell, Daniel C. Weary, Caldwell, Eastin, Blackwell & Oliver, Kansas City, for respondents.

VAN OSDOL, Commissioner.

In this case are contentions relating to the construction of Section 570, R.S. 1929, Mo.R.S.A., part of the Inheritance Tax Law of Missouri as enacted in 1917. See L.1917, p. 114. The principal question presented is the effect of the language of Section 570 in its application to a voluntary irrevocable trust indenture executed in 1930 (prior to the amendment of Section 570, supra, in 1931; L.1931, p. 130). Particularly involved is the language of original Section 570 which imposed the tax upon the transfer of property or any interest therein or income therefrom, in trust or otherwise, when "the transfer is made * * * in contemplation of the death of grantor, vendor or donor, or *intending to take effect in possession or enjoyment at or after such death.* * * *" (Our italics.)

In reviewing this case it is also necessary, because of the contentions of the parties, appellant and respondents, to examine the effect of the amendment of 1931 in determining whether the transfer involved in this case was taxable under the original Section 570, which amendment of 1931

added a clause to the Section 570 as follows, "When the transfer is * * * in trust or otherwise *and the transferor has retained for his life or any period not ending before his death,* (1) *the possession or enjoyment of or the income from the property * * *.*" (Our italics.) L.1931, p. 130, supra; see now Section 145.020, subd. 1, (3) and (4) RSMo 1949, V.A.M.S.; and as repealed and a new section in lieu thereof enacted in 1957, L.1957, p. 780, RSMo Supp.1957, V.A.M.S.

The facts of this case are not in dispute. It is stipulated that on July 15, 1930, Ida R. Hutchins, a resident of Missouri who died testate August 31, 1953, had executed a voluntary irrevocable trust indenture by which she "granted, bargained, sold, assigned, set over, and delivered" to the named trustee, The First National Bank of Kansas City, in trust, property as per schedule "A" made a part of the indenture, the property listed being stocks, bonds and other investments of substantial value.

The indenture effected a transfer to the trustee to "have and to hold the same, together with all privileges, and appurtenances thereto belonging, and all income and profits arising therefrom in trust * * *," and the trustee was empowered to collect and receive all income and profits, the net income derived from the trust estate to be paid in convenient installments "to the Grantor for and during the period of her natural life"; and *the indenture further provided that* "Upon the death of the Grantor, the Trustee shall pay * * *" portions of the corpus to some of the named beneficiaries, and other portions were to be continued in trust and the income from the reduced corpus was to be paid over to other named beneficiaries.

All of the beneficiaries are parties respondent in this proceeding upon appeal.

As stated, Ida R. Hutchins died testate August 31, 1953, and The First National Bank of Kansas City, trustee named in the trust indenture, was also named by the testatrix as executor of her will; and the named executor qualified and has at all times acted as such.. The trustee-executor is a party respondent here.

Upon the death of Mrs. Hutchins, grantor and testatrix, the inheritance tax appraiser, appointed by the Probate Court of Jackson County, in his report determined and assessed the assets of the trust estate as includable for the purpose of inheritance tax computation and, subsequently, the Probate Court overruled exceptions to the appraiser's report, which exceptions had been filed by the respondent trustee-executor and by the respondent beneficiaries. But, upon appeal to the Circuit Court, the order of the Probate Court overruling the exceptions was reversed and the assets of the trust were ordered eliminated from the report and excluded from inheritance tax assessment. The Director of Revenue of the State of Missouri has appealed.

At the outset upon mere cursory examination of the transfer by trust indenture involved here it would seem clear it was intended that the donees, beneficiaries, respondents here (other than the respondent trustee-executor), were to take "in enjoyment" only at or after the grantor's death. The grantor retained the *enjoyment* of her property for and during her life.

It is argued by respondents that the trust indenture effected a present transfer of the grantor's "entire right, title and interest in and to the trust property," and that the granting language of the trust indenture was a present transfer of "absolute title" to the trustee; but, *if we were going into some question of title to the corpus of the trust, we should be obliged to qualify respondents' argument by saying the transfer to the trustee was a transfer of the legal title. This does not mean that the indenture transferred to and evidenced an "absolute title" in the trustee in any sense that under the indenture the trustee became the absolute owner of the trust corpus. The donee beneficiaries, or cestui que trustent, became and were the beneficial owners.* (Obviously, the grantor also gave over to

the trustee for trust purposes the possession of the assets scheduled as comprising the corpus.)

Because of the trust established by the trust indenture, there was a separation of the property interests in the corpus of the trust. A legal interest went to the trustee. A beneficial interest was transferred to the grantor by the indenture, who thus became a beneficiary; and beneficial interests were transferred to the respective respondent beneficiaries—all these beneficial interests we may denominate "equitable." Again, speaking of title, the indenture constituted legal title in the trustee; and the trust indenture also transferred and defined beneficial, equitable interests to and in the beneficiaries (and fixed the time of the enjoyment thereof). The indenture may have effected a (then) *present* transfer of the equitable interests to respective respondent beneficiaries to be in future enjoyment, that is, upon the death of Mrs. Hutchins; or it could be said the indenture transferred an equitable life interest to the grantor, and vested equitable future interests in respondent beneficiaries. Consequently, it may well be that during her lifetime, because of the equitable beneficial life interest by the indenture transferred to or conferred upon or retained by her, the valuable property right to the income and profits derived from the trust estate was in Mrs. Hutchins for life, which right, the respondent beneficiaries, because of the interests vested in them to be enjoyed in futuro, were to succeed and enjoy at or after her death.

Thus far we have gratuitously and loosely spoken of more or less technical matters relating to title and rights incident to property interests, legal or equitable, such as might be said to have been transferred to the trustee and to the beneficiaries. Even so, this discussion alone would seem to demonstrate that the interests of respondent beneficiaries in the trust property, under the instant trust indenture, were to be in "enjoyment" only at or after the death of Mrs. Hutchins.

It is not necessary, however, to here painstakingly analyze the indenture and precisely and technically describe the interests transferred and defined by it. Whatever interests were transferred to them by the indenture, respondent beneficiaries were clearly intended to enter into the enjoyment thereof at or after Mrs. Hutchins' death. As we have said, the net income and profits were by the grantor in the indenture directed to be paid over to the grantor herself for and during the period of her natural life. Clearly, respondent beneficiaries were not to reap any economic benefit —they were not to participate in any distribution of the corpus or receive any income or profits derived from the trust estate—until the death of Mrs. Hutchins. One with whatever interest in an estate could not be correctly said to be in the actual enjoyment of it as long as he had no right to the income or profits accruing from it. It seems the conclusion is thus compelled that they, respondent beneficiaries, were to take in "enjoyment" at or after the death of Mrs. Hutchins. This is our tentative conclusion.

This and other but similar bases for decision almost invariably have been recognized by the courts of other states in determining the liability for state inheritance or succession taxes (under statutes with language substantially as we have italicized in the partially quoted Section 570) where there have been transfers of property to trustees to pay the income to the grantors, transferors, donors or settlors for their lives with directions that upon their deaths the corpora were to be paid to designated beneficiaries. The decisions of other states are apparently unanimous in holding that such a transfer, though the trust may be irrevocable, is to be deemed intended to take effect at or after death. See the cases collated in the Annotations, 49 A.L.R. 878–881; 67 A.L.R. 1250–1253; 100 A.L.R. 1247–1251; 121 A.L.R. 364–366; 155 A.L.R. 856–860; 167 A.L.R. 443–448.

With such sure support for our tentative conclusion, we do not hesitate to now give

the conclusion decisive effect. And, since language, such as we have italicized in the quoted Section 570, is believed by us to be, and by others so often has been considered as clearly applicable to a transfer in trust where the income of the trust estate is reserved in or to be paid to the grantor for life as was expressly done in the indenture herein involved, we think there is no question here of "construction" of the italicized clause of Section 570 in its application to the transfer involved in this case, and so there is no reason for any application of the principles correctly recognized in other cases involving the construction of ambiguous statutes, in which cases have been applied the rule of strict construction against the taxing authority, and the rule that if the right to tax is not plainly conferred by the statutes, it is not to be extended by implication.

Reish v. Commonwealth, 106 Pa. 521, decided in 1884, is the leading case in general treatment of the issue here, although in that case the grantor, John Reish, had conveyed and transferred real estate and personalty directly, without condition or reservation, to his brother Isaac. The brother Isaac contemporaneously executed a bond the obligation of which was conditioned upon the payment of the income arising from the property to the grantor John. The (collateral) inheritance tax statute of Pennsylvania provided a tax upon all estates of every kind whatsoever " 'transferred by deed, grant, bargain or sale, made, or intended to take effect, in possession or enjoyment, after the death of the grantor or bargainor * * *.' " The question was—what was the effect of the writings of August 10, 1878, as far as the charge for inheritance tax was concerned? Said the Supreme Court of Pennsylvania, 106 Pa. at pages 525–526.

" * * * The deed and bond were contemporaneous, the execution and delivery of both constituted a single transaction; the deed was absolute, it contained no condition, it was without reservation; but the bond, although in the form of a mere personal obligation, was in effect, we think, as regards the collateral inheritance tax, a postponement of the time of enjoyment, a reservation of the income and profits of the property, during the lifetime of the grantor. All property is subject to the tax which, in the language of the statute, is transferred by deed, etc., *made or intended to take effect* in possession, *or enjoyment* after the death of the grantor. The commonwealth's right to collateral inheritance tax is, therefore, not defeated by a conveyance of the title, nor by possession taken under it, if the enjoyment is intended to take effect at the death of the grantor. The enjoyment of real estate is not the exact equivalent of possession, nor is it so used in this statute; in no case could the distinction be more clearly made, than in the case under consideration. Under his deed, Isaac Reish was the undoubted owner of the lands in fee, and of the personalty absolutely, and the title drew to it the right of possession; but by the express contemporaneous agreement of the parties, the ownership took effect *in enjoyment* at the death of the grantor. John Reish, was entitled to receive the same income and profits from the property, during his life, as if the transfer had not been made. One certainly cannot be considered, as in the actual enjoyment of an estate, who has no right to the profits or incomes arising or accruing therefrom.

"It is true, the obligation of the bond was not inserted as a condition or reservation in the deed, it was in form a mere personal obligation; but this contention does not involve a technical question of title nor of lien, the whole matter depends upon the single fact, whether or not the transfer was made or intended to take effect, in enjoyment at the death of the grantor. The policy of the law will not permit the owner of an estate, to defeat the plain provisions of the collateral inheritance law, by any device which secures to him, for life, the income, profits, and enjoyment thereof; it must be by such a conveyance as parts with the possession,

the title, and the enjoyment in the grantor's life time."

It would be impossible for us to improve upon what the Supreme Court of Pennsylvania said.

Here we digress to note the case of May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, decided in 1930, which decision of the Supreme Court of the United States certainly was neither in harmony with decisions of courts of other states nor with our decision here. It was noted in the May case that the Federal taxing statute imposed an excise on the transfer of an estate upon death of the owner; whereas, the statute involved in our case, and generally in the statutes involved in the state decisions annotated in the American Law Reports, supra, provided for inheritance or succession taxes. (In Priedeman v. Jamison, 356 Mo. 627, 202 S.W.2d 900, it was noticed that our Missouri inheritance tax is a tax on the privilege of receiving or taking property, rather than on the transfer or transmission of property at death.) In the May case it was held that the transfer in the trust involved in that case was not in contemplation of or "intended to take effect in possession or enjoyment at or after his death" [281 U.S. 238, 50 S.Ct. 287] within the meaning of the clause as used in the Federal Estate Tax Statute. It would seem that the decision was based on some idea that no interest in the corpus passed at the settlor's death because legal title had passed from the settlor when the trust instrument was executed.

The Supreme Court of the United States in 1949, by majority opinion, treating with a trust indenture executed in 1924, entirely repudiated the rationale of May v. Heiner (Commissioner of Internal Revenue v. Church, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288), although the Congress by joint resolution March 3, 1931, and by amendment June 7, 1932, had amended the Federal estate-taxing statute in effect as did our Legislature amend Section 570 in 1931. In 1954 the Congress limited the estate tax law as affected by the joint resolution of 1931 and the amendment of 1932 by providing that the amended section "shall not apply to a transfer made before March 4, 1931; nor to a transfer made after March 3, 1931, and before June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931." 26 U.S.C.A. § 2036. Respondents say this later legislation "completely reversed the effect of Church and exempted (from the Federal estate tax) all transfers in trust with a life interest in the income retained by the Grantor," which transfers were made prior to March 3, 1931, the date of the joint resolution of Congress in substance the same as the 1931 amendment of the Missouri Section 570, supra. But from this asserted premise it should not be urged that the May v. Heiner doctrine has had express or tacit approval of the Congress. The Supreme Court of the United States has said (in the Church case) that the May v. Heiner doctrine "has been repudiated by the Congress and repeatedly challenged by the Treasury." Anyhow, we in Missouri are untroubled by any Missouri decision enunciating and applying any such doctrine as that of May v. Heiner to the Section 570 of the Inheritance Tax Law of Missouri of 1917.

Aside from the May v. Heiner case, and some Federal decisions following it, there seems to be little or no authority for any incidence of a thought of ambiguity or lack of clarity in a "possession or enjoyment" clause such as italicized in the quoted original Section 570 in definitely including within its taxing reach property transferred in trust, where income and profits are reserved in or to be paid to a settlor for life, the corpus or income and profits derived therefrom to go to named beneficiaries at the death of the settlor.

Much has been said by respondent here in support of the theory of a legislative construction put upon the "possession or enjoyment" clause of Section 570, supra. It

is argued that the Legislature must have thought the original Section 570 was not sufficiently broad in its embrace to include a transfer in trust such as here, inasmuch as the Section was amended in 1931 to include the additional clause, "When the transfer is * * * in trust or otherwise and the transferor has retained for his life or any period not ending before his death, (1) the possession or enjoyment of or the income from the property * * *." L. 1931, p. 130, supra. We are unable to say what prompted the amendment of 1931. It is possible that the Legislature had become advised of and had in mind the opinion of the Supreme Court of the United States in May v. Heiner. But whatever occasioned the meticulous "spelling out" ("transferor has retained for his life * *, the possession or enjoyment of or the income from the property * * *") observable in the amendment of 1931, the amendment could not have added to the clause we have quoted from the original Section 570, in such a way as to affect the clear application of Section 570 to the transfer considered here. And if the Legislature's reason for the amendment was based upon the decision of May v. Heiner, or if the Legislature merely supposed the original Section 570 was not broad enough to include for taxation a transfer such as involved in the instant case, then, and in either event, the Legislature's reason was an unsound one. While legislative construction or interpretation where clear is persuasive and should be given respectful consideration, it is not conclusive on the courts. Gartenbach v. Board of Ed. of City of St. Louis, 356 Mo. 890, 204 S.W.2d 273. And the fact that the Legislature erroneously regarded the original statute, Section 570, as ineffectual in its application to transfers such as here would not make it so. Courts certainly are not bound by the Legislature's erroneous construction of a law. Hall v. City of Sedalia, 232 Mo. 344, 134 S.W. 650.

The order and judgment of the Circuit Court reversing the Probate Court's order overruling respondents' exceptions to the appraiser's report should be reversed, and the Probate Court's order and the appraiser's report reinstated, and the cause should be remanded to the Circuit Court with directions to certify the cause to the Probate Court for further proceedings. It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.