William R. EDGAR, Executor of the Estate of Charles Monroe Fitzpatrick, Deceased, Plaintiff-Respondent,

v.

Carl FITZPATRICK, Vesta Fitzpatrick, and June Hitt, Defendants,

Marvin Fitzpatrick, Opal Williams, and Jessica Rice, Defendants-Appellants,

and

Faye Varnum, Guardian of the Person and Estate of Jettie Fitzpatrick, Incompetent, Defendant-Respondent.

No. 8109.

Springfield Court of Appeals.

Missouri.

June 27, 1963.

Motion for Rehearing or to Transfer to Supreme Court Denied July 20, 1963.

William H. Wyne, Jr., Ray T. Dreher, Clayton, for defendants appellants.

William R. Edgar, Jr., Ironton, for plaintiff-respondent.

Dearing, Richeson & Weier, Will B. Dearing, Hillsboro, for defendant respondent.

RUARK, Presiding Judge.

This is a declaratory judgment suit which involves the will and an inter vivos trust executed by Dr. Charles Monroe Fitzpatrick, a resident of Reynolds County, who died on the 13th day of December, 1959, at the age of eighty years.

On July 29, 1957, Dr. Fitzpatrick executed a printed form of instrument entitled "Revocable Declaration of Trust" as follows:

## "REVOCABLE DECLARATION OF TRUST

I, the undersigned declarer, having purchased or declared my intention to purchase certificates of Participation in one or more Series of the Keystone Custodian Funds and/or shares of Keystone Fund of Canada, Ltd., do hereby declare that such certificates or shares, which may be under a Keystone Open Account, are to be in trust upon the following terms:

(1) As trustee, I shall have the right to sell, assign, transfer, invest, reinvest, and otherwise deal in the trust estate or any part thereof, on such terms as I shall deem appropriate; and, as trustee, to receive additional shares of property from whatever source which shall be added to the trust estate.

(2) During my lifetime, the income from the trust estate, including distributions of realized capital gains, or such other payments of income or principal as I shall specify from time to time, shall be payable to me individually, for my own personal use and account.

(3) Upon my death, this trust shall terminate and the then trust assets shall be distributed to the following beneficiaries in the proportions indicated.

| Beneficiaries | Residence | Proportion |
|---|---|---|
| Mrs. Opal May Williams | 5424 Cabanne Ave., of St. Louis, Missouri | 1/3 |
| Mrs. Jessica Gertrude Rice | of Roselle, Missouri | 1/3 |
| Marvin Lowell Fitzpatrick | 2941 Wayne Ave., of Granite City, Ill. | 1/3 |

(4) In the event a named beneficiary shall predecease me, the indicated proportion of the trust assets to which he would have otherwise been entitled upon my death shall upon termination of the trust be distributed among the surviving beneficiaries as their proportionate interests then appear.

(5) In the event all of the named beneficiaries predecease me, the trust shall terminate and the then trust assets shall revert to me free and clear of the terms of this trust.

(6) I, the undersigned declarer, reserve the right to change the beneficiaries and their respective interests or to revoke this trust in whole or in part at any time prior to termination by a written instrument signed by me, which shall be attached hereto.

Executed under seal this  29th  day of  July , 19 57.

/s/   Ralph W. Yoder      /s/    Charles Monroe Fitzpatrick
Witness      Declarer

(Typed) Charles Monroe Fitzpatrick

This Trust shall be known as the CHARLES MONROE FITZPATRICK Trust #1. * * *"

The names, addresses, and proportions of the beneficiaries and the addition as to the name of the trust were filled in by typewriter, as was the date.

The showing of circumstances surrounding the execution of this trust is meager. All we know is that it was executed while the doctor was in a hospital in St. Louis. "Q. What hospital was Dr. Fitzpatrick confined in? (Objection overruled.) A. Missouri Baptist Hospital." The executor testified that after his appointment Marvin Fitzpatrick, one of the beneficiaries named in the trust, told him, the executor, "We got in touch with Mr. Yoder, a broker who had sold Dad all of those Keystone shares, we took him out to see Dad and he told Dad how he could arrange this trust. All we were trying to do was to see to it that Grandma didn't get anymore [sic] out of the estate than we did." "Grandma" was Jettie Fitzpatrick, who was Dr. Fitzpatrick's (second) wife for thirteen years and is now his widow.

On February 13, 1958, Dr. Fitzpatrick executed his last will and testament which, so far as here pertinent, provided first for the payment of his debts; second a devise of certain real estate to his daughter, Jessica Rice; third to a daughter, Opal Williams, certain real estate; fourth to the widow and children of a deceased son $5.00 each, and to another grandson $1,000; fifth and sixth to the son, Marvin Fitzpatrick, certain real estate. Paragraph seven was as follows:

"7. To my wife, JETTIE FITZPATRICK, if she survives me, I give and bequeath all of the books, wearing apparel, household electrical appliances, household musical and other amusement instruments, and all household and kitchen furniture, appliances, utensils and implements; together with an allowance in the sum of Twenty-four Hundred Dollars ($2400.00) for her maintenance during the period of one year after my death; and I direct my executor hereinafter named to make

payment of said sum to her, in cash, within thirty (30) days after the probate of my will, the same to be in lieu of the family allowance provided for by Section 474.260, R.S.Mo.1949, as amended. And, in addition to all of the above, I give and bequeath to my said wife, if she survives me, a sum equal to one full third of my entire estate, the amount of said sum to be determined by a fair and reasonable appraisal of the clear market value of all of the property of which I die seized, not only the real estate herein specifically devised to my children, but all other property, real and personal, owned by me at the time of my death; and when such appraisal has been made, after deducting from the total thereof, the appraised value of the exempt property herein bequeathed to her and the amount of the family allowance herein set apart to her, and the total of all claims against my said estate, one-third of the balance shall be paid to my said wife as her share of my estate. In making this provision, I have in mind my desire to devise certain specific parcels of my real estate to my children and also my desire to make every provision for my said wife which is contemplated by statute."

Paragraph eight made Marvin, Opal and Jessica, his son and two daughters, residuary legatees of the will. (These are the same people who were transferees in the transfer of July 29, 1957.) Paragraph nine provided that the beneficiaries should take free of state and federal taxes and that such should be paid out of the general estate.

This will was prepared by an experienced attorney. There is no indication that Dr. Fitzpatrick informed the attorney about the previously executed declaration of trust. After the doctor's death, his executor "found stock certificates, notes, and so forth, in all parts of the house and office too." Included in these were the declaration of trust and certificates of stock in the

596

Keystone Custodian Funds issued to Charles Monroe Fitzpatrick, Trustee. The total value of such certificates at the time of death was slightly in excess of $33,000.

The inventory of estate listed real estate of value of $16,190 and personal property at $49,246.42. Separately listed was joint and entirety property of the value of $19,832.98. The evidence shows that some of this jointly owned property was acquired from assets owned by Jettie Fitzpatrick prior to marriage, but we do not know in what amount. The inventory also listed separately the Keystone Fund certificates above mentioned.

The Treasury Department filed a demand against the estate for a total of approximately $120,000 for delinquent income taxes and penalties. After several months' checking of records the executor was successful in getting the claim reduced to $51,000 plus interest. The executor employed an auditor (cost $555). Afterwards, with approval of the probate court, a contract was entered into with attorneys to defend the tax claim with a contingent fee of one-third of whatever amount was saved in reducing the claim. Subsequently, the tax claim was settled for $10,300 including interest; but the estate became liable on its contingent fee contract in the sum of $17,365. (The validity of this liability is not questioned here.) Thus the agents of our government, which both giveth and taketh away, by the insistence upon a claim many times in excess of the amount they eventually, by settlement, agreed to be just, have caused the estate to be greatly depleted.

The executor brought this suit setting up the fact that, in order to pay the amount bequeathed to the widow, Jettie, he may be required to exhaust the residuary estate and all or part of the specific legacies and devises and praying that the court construe the will and determine the manner in which the estate should be distributed, and also praying that the court ascertain and determine whether the Keystone Custodian Fund shares described in the declaration of trust

are to be considered as a part of the estate in determining the share to be distributed to the defendant, Jettie; and further that the court determine the order in which legacies and devises shall be abated, and whether the distribution to Jettie shall be made an equitable charge on such legacies and devises and whether the executor has authority to sell the same either to satisfy claims or to make distribution to Jettie.

The answer of Jettie (for whom a guardian was substituted) asserts that, if in fact Dr. Fitzpatrick executed the revocable declaration of trust in regard to the Keystone shares, such instrument was not binding upon Jettie and that its execution violates Section 474.150 of the Missouri Statutes as being in fraud of the marital rights. We will refer to this answer in more detail later.

The defendants Fitzpatrick, Williams, and Rice denied that there was any ambiguity in the will and prayed such construction, also that the court declare the Keystone stock not be considered as a part of the estate and not be considered in determining the share of the widow.

The court made specific findings of fact which included the condition of the estate. It found that the direction to the executor to make every provision for the testator's widow "which is contemplated by statute," together with the fact that the will was written after the declaration of trust, and the use of the fraction one-third, indicated a desire to treat the entire property, "including the declaration of trust," as a unit; that there were not sufficient assets to permit payment to Jettie Fitzpatrick according to this construction, and the specific legacies and devises must abate in part to realize the funds necessary therefor. He found as a matter of law that the will should be construed as above stated and that the value of the Keystone shares were intended to be and should be included in determining the amount to be paid to the widow.

The defendants, who are transferees under the trust indenture and also both specific

and residuary legatees and devisees, appealed. This court wrote an opinion, concurred in by all, holding in effect that the will was not ambiguous but that the trust was in fraud of the marital rights of the wife and the judgment was affirmed as being a proper judgment, although the reasons assigned were erroneous. Motion for rehearing raised various questions, including that of jurisdiction. Rehearing was granted, and the case was reargued and is now reassigned to the writer.

█ *Our jurisdiction* is questioned in the motion for rehearing and reargument on the ground that a holding that the transfer was fraudulent puts the whole amount of the Keystone shares ($33,000) in the estate. This contention is based on what was said in Wahl v. Wahl, Mo.App., 200 S.W.2d 597. The issues in that case can be better understood by reading the Supreme Court opinion at 357 Mo. 89, 206 S.W.2d 334. There the petition, by those who claimed as inter vivos transferees, prayed that they be adjudged the holders of all right, title and interest in the stock. It alleged nothing as to the rights of the widow *individually*. It stated that the widow claimed as executrix and that she had inventoried the stock. It did state that she had renounced the will and accordingly claimed a one-half interest. As to such last allegation the court said, 200 S.W.2d l. c. 598, "What appellant was then claiming is a mere conclusion on the part of plaintiffs. It is not an allegation of fact." That case involved these contentions: (1) The transfer was void because it was without consideration and there was no delivery; (2) the whole transfer was testamentary because of the fact that title passed to the beneficiaries "only upon his death"; (3) lastly, the transfer was a fraud on the wife.

In our case the executor asked that the will be construed so as to determine whether the Keystone shares are to be considered as part of the estate *in determining the share to be distributed to the widow, Jettie,* and that the court determine the order in which legacies and devises in the will shall abate.

The answer of the widow is somewhat ambiguous (we suspect intentionally). It charges that the transfer "is null and void and not binding upon this defendant, as the execution of such instrument, if in fact it was executed, violates Section 474.150, Missouri Statutes Annotated, which provides that any gift made by a person, whether dying testate or intestate, in fraud of the marital rights of the surviving spouse shall at the election of the surviving spouse be treated as a testamentary disposition and may be recovered from the donee." The prayer is that the court declare the law to be that she is entitled to a full one-third of testator's estate; that the court enter judgment declaring that *the value* of the Keystone shares be and is an asset of the estate and that *the value thereof* be distributed in accordance with the terms of the will.

█ If the trust was testamentary in character, the transfer would be void *in toto,* and the full amount of the stock would go into the estate. But the transfer from Fitzpatrick to himself as trustee, retaining the right to income and enjoyment for his life, together with the right to modify or revoke, but conferring an interest *in praesenti* in the beneficiaries, although the enjoyment thereof was deferred until the settlor's death, does not *necessarily* render the trust invalid.[1] If the transfer was in fraud of the widow's marital rights, it would be void

---

[1]. Restatement, Trusts 2d, § 57, p. 151; 54 Am.Jur., Trusts § 34, pp. 45, 46; § 26, pp. 40, 41; 3 Maus, Probate Law and Practice, § 36, pp. 23, 24; 32 A.L.R.2d, Anno. 1270; Davis v. Rossi, 326 Mo. 911, 34 S.W.2d 8; Masterson v. Plummer, Mo. App., 343 S.W.2d 352; Sims v. Brown, 252 Mo. 58, 158 S.W. 624; see Coon v. Stanley, 230 Mo.App. 524, 94 S.W.2d 96, 98; In re Hutchins' Estate, Mo., 323 S.W.2d 796; Atlantic Nat. Bank of Jacksonville, Fla. v. St. Louis Union Trust Co., 357 Mo. 770, 211 S.W.2d 2; Trautz v. Lemp, 329 Mo. 580, 46 S.W.2d 135.

only to the extent necessary to protect her interest, and a holding that it was fraudulent as to her would not deprive the transferee beneficiaries of the remaining portion.[2] Since the widow took under the will, her interest was one-third subject to debts.

■ For jurisdiction to be vested in the Supreme Court in suits where straight monetary relief is not sought, it must affirmatively appear that the value in money of the relief to the plaintiff, or of loss to the defendant should relief be granted, or vice versa, is in excess of $15,000.[3] Whether the amount in dispute be calculated in accordance with the construction prayed by the executor, or whether it be calculated on the theory that the trust was fraudulent as to the widow and sufficient of the trust assets be subjected to a proportionate part of the debts and the widow's proportionate part after payment of debts (whether the same be done by a direct charge against the Keystone shares or by penalizing the interests of the general and special legatees and devisees who are also the beneficiaries in the revocable trust transfer), the amount, by computation, which the widow will stand to gain, or the beneficiaries will stand to lose, is less than $15,000.

■ Even if the widow's answer be interpreted as an attempt to consider the entire transfer void, we find nothing in the record which pursues such claim. Claims made in a petition do not necessarily control jurisdiction. The court will look to the whole record to discover the real and actual value of the amount in dispute.[4] We therefore retain jurisdiction.

■ *The construction of the will* must be undertaken with the fixed beginning premise that the intention of the testator must be gathered from the whole will, what the will itself says in its general scope and import.[5]

■ In order to ascertain what the testator meant by the words he used in the will, it is often necessary to receive evidence of and consider the circumstances and conditions surrounding the testator at the time he executed his will. This becomes necessary when there is an apparent ambiguity or a "want of clearness" in the language used,[6] or upon occasions when there is a latent ambiguity (usually in reference to identity of property or persons).[7] The purpose in considering the circumstances is to permit the court to put itself as nearly as possible in the position of the testator in order to ascertain what he meant by what he said, or, as has been stated, to look at the situation through his spectacles.[8]

■ It is held that words used in a will are to be interpreted in their ordinary

2. Section 474.150 V.A.M.S.; 1 Scott on Trusts, § 57.5, p. 350; Kerwin v. Kerwin, Mo.App., 204 S.W. 922, 924; Wanstrath v. Kappel, 356 Mo. 210, 201 S.W. 2d 327, 331; Id., 358 Mo. 1077, 218 S.W. 2d 618, 621; Breshears v. Breshears, 360 Mo. 1057, 232 S.W.2d 460; Resch v. Rowland, Mo., 257 S.W.2d 621.

3. Higgins v. Smith, 346 Mo. 1044. 144 S. W.2d 149; Fleischaker v. Fleischaker, 338 Mo. 797, 92 S.W.2d 169; Hamilton v. Robinson, Mo., 146 S.W.2d 601; St. Louis Union Trust Co. v. Toberman, 345 Mo. 613, 134 S.W.2d 45; Mississippi Valley Trust Co. v. Bowler, 346 Mo. 800, 143 S.W.2d 59.

4. Higgins v. Smith, supra, 346 Mo. 1044, 144 S.W.2d 149; Nemours v. City of Clayton, 351 Mo. 317, 172 S.W.2d 937; Buddon Realty Co. v. Wallace, Mo., 188

S.W.2d 28; Esmar v. Haeussler, 341 Mo. 33, 106 S.W.2d 412; Whitworth v. Monahan's Estate, 339 Mo. 1123, 100 S.W.2d 460; Finley v. Smith, Mo.App., 170 S.W. 2d 166.

5. 95 C.J.S. Wills § 590, p. 730; Crist v. Nesbit, Mo.App., 352 S.W.2d 53; Thomas v. Higginbotham, Mo., 318 S.W.2d 234; Shriners Hospitals for Crippled Children v. Emrie, Mo., 347 S.W.2d 198.

6. Mavrakos v. Papadimitriou, Mo.App., 331 S.W.2d 161; Rowe v. Strother, 341 Mo. 1149, 111 S.W.2d 93.

7. Evans v. Volunteers of America, Mo., 280 S.W.2d 1; Schubel v. Bonacker, Mo., 331 S.W.2d 552, 556; Gehring v. Henry, Mo., 332 S.W.2d 873.

8. Littleton v. General American Life Ins. Co., Mo.App., 136 S.W.2d 433; Bakewell v. Mercantile Trust Co., Mo., 319 S.W.2d

sense and meaning, unless a different meaning is indicated by the context or circumstances.[9] Well known technical words are usually to be considered in the technical sense. 3 Maus, Probate Law and Practice, § 316(J), p. 293. A testator (so it is held) is presumed to know the legal effect of the language he uses,[10] and, if the will is written by his lawyer, the technical language of the lawyer must have its legal effect and meaning.[11]

■ Referring now to the will. It does not, *on its face,* appear to be ambiguous. The testator wants his widow to receive in cash the value of all his property, "a sum equal to one full third of my entire estate," as determined by an appraisal of "all of the property of which I die seized," "all other property, real and personal, owned by me at the time of my death". These words we think are clear enough either by ordinary or by legal language. He did not own and was not seized of any interest in the Keystone shares, either legal or equitable, which extended beyond his own life. These he had already transferred. The ambiguity, if any, must therefore be one which tends in the direction of a latent ambiguity—the existence of the transfer and its effect—and this must be based upon the assumption that the testator is "presumed to know the law" and therefore knew that he had executed a transfer which was at least potentially fraudulent as to his wife, and because of such he intended to reach out through his will and take the trust property into account in computing the amount which went to his widow. An easy answer to this we think is that, had he so intended, he could have easily said so. The will provides for an interest of the widow in that which the testator owned at death, and that cannot include a computation based upon the value of property with which he had already parted.

■ However unjust the courts may believe a will to be, they cannot rewrite it or make a new one for the testator.[12] Again we are of the opinion that we cannot construe the will as the trial court apparently did in making his decision.

■ *As to whether or not the trust was a fraud on the wife.* There is no question that a husband may, during his lifetime, transfer his personal property, with or without consideration and with or without joinder of his wife. But he may not transfer his property, real or personal, in fraud of his wife's (widow's) marital rights.[13] Transfers in fraud of the widow's marital rights have long been a subject of equity jurisdiction in this state, and long before the passage of Section 474.150, R.S.Mo. 1955, V.A.M.S., it was held that transfers which are made with a fraudulent purpose and intent of depriving the wife of her marital rights will be disregarded in so far as the widow's interests are concerned.[14] The word "fraud" has been used invariably in reference to the transfers which the courts have set aside.

The Missouri cases have generally held that the "fraud" involved is one which

600; Boxley v. Easter, Mo., 319 S.W.2d 628; Winkel v. Streicher, 365 Mo. 1170, 295 S.W.2d 56.

9. Obetz v. Boatmen's Nat. Bank of St. Louis, Mo., 234 S.W.2d 618, 622; Boxley v. Easter, supra, Mo., 319 S.W.2d 628.

10. Gehring v. Henry, supra, Mo., 332 S.W. 2d 873; First Nat. Bank of Kansas City v. Hyde, Mo., 363 S.W.2d 647; Thomas v. Higginbotham, supra, Mo., 318 S.W.2d 234.

11. Crist v. Nesbit, supra, Mo.App., 352 S.W.2d 53; Littleton v. General American

Life Ins. Co., supra, Mo.App., 136 S.W. 2d 433.

12. Scullin v. Mercantile-Commerce Bank & Trust Co., Mo., 234 S.W.2d 597(7); Price v. Gordon, 347 Mo. 354, 147 S.W. 2d 609, 614.

13. 64 A.L.R.Anno. 466; In re Bernays' Estate, 344 Mo. 135, 126 S.W.2d 209, 122 A.L.R. 169; Szombathy v. Merz, 347 Mo. 776, 148 S.W.2d 1028, 1029.

14. Newton v. Newton, 162 Mo. 173, 61 S.W. 881, 885; Merz v. Tower Grove Bank & Trust Co., 344 Mo. 1150, 130 S.W.2d 611.

necessarily encompasses the *intent and purpose of the transferor to defraud the spouse*.[15] In attempting to interpret this intent on the part of the transferor, various factors have been considered. It is usually said that, where the transfer is without consideration, the fact of contemplation of death on the part of the transferor is a necessary ingredient of the fraud. Kerwin v. Kerwin, Mo.App., 204 S.W. 925 and cases *post*. Other factors which have been mentioned in attempting to ascertain the intent of the transferor are whether the transfer is irrevocable (Wahl v. Wahl, 357 Mo. 89, 206 S.W.2d 334) and whether it is surreptitious or known to the spouse.[16] Running through all the cases, whether by express statement or by implication, is the all-important consideration of extent and proportion—that is, the proportion which the property transferred in deprivation of the widow's marital rights bears to the whole of the transferor's assets.

Referring now to a transfer accomplished by the particular means involved in this case, that is a transfer without consideration, by means of inter vivos trust in which the settlor assigns a considerable portion of his personal property, but reserves the power of control, the right to amend or revoke, the right to change the beneficiaries, and the use of income from the property for and during his own life, while effectively denying such to his widow: In respect to such transfers a considerable body of authority holds that the arrangement is fraudulent as "colorable" or "illusory." The assignment, while not on its face testamentary as a technical proposition, is in practical effect a device by which the widow's rights are defeated. The transaction is judged by its substance rather than by its form and will not be permitted to stand as against the objection of the widow.[17] As stated in the Newman and Bolles cases, *the intention of the husband to defraud his widow* is not the controlling factor. Such aforementioned device is considered to be in violation of public policy as expressed in the laws respecting marital rights.[18] The proportion of the property transferred and the degree to which the wife is deprived are the controlling factors in determining whether the transfer is actually fraudulent.[19] Some decisions say that, if the transfer comprises a substantial part of the transferor's property, the transfer is presumptively fraudulent.[20]

It would appear that the bottom upon which such decisions rest is that the "fraud" under examination is one which is really determined by the *effect* of the transfer rather than by the purpose or intention of the settlor to defraud and that when (a) the transfer is without consideration and without the assent of the wife, (b) the settlor retains the right to revoke, (c) the settlor retains the income and enjoyment, and (d) the proportion of the assets of the settlor so transferred is such as to substantially deprive the widow of that which she would otherwise take under the statutes, then such transfer is presumptively a *fraud on the law.*

■ But we have to consider the Missouri cases which involve this character of conveyance. Merz v. Tower Grove Bank &

---

15. See cases at West's Missouri Digest, Descent and Distribution, ☞69.

16. Headington v. Woodward, Mo., 214 S.W. 963; Hastings v. Hudson, 359 Mo. 912, 224 S.W.2d 945.

17. 49 A.L.R.2d Anno. 521(5); 64 A.L.R., supra, Anno. 466(IV); 1 Scott on Trusts, supra, § 57.5, p. 350; Newman v. Dore, 275 N.Y. 371, 9 N.E.2d 966, 112 A.L.R. 643; Bolles v. Toledo Trust Co., 144 Ohio St. 195, 58 N.E.2d 381, 157 A. L.R. 1164; see Newton v. Newton, supra,

162 Mo. 173, 61 S.W. 881, 883; Tucker v. Tucker, 29 Mo. 350, 32 Mo. 464.

18. 1 Scott on Trusts, supra, § 57.5, p. 350; Harris v. Harris, 79 Ohio App. 443, 74 N.E.2d 407; see 26 Mo.L.Rev., p. 13.

19. Whittington v. Whittington, 205 Md. 1, 106 A.2d 72, 49 A.L.R.2d 513; Mushaw v. Mushaw, 183 Md. 511, 39 A.2d 465.

20. Cochran's Adm'x v. Cochran, 273 Ky. 1, 115 S.W.2d 376; Payne v. Tatem, 236 Ky. 306, 33 S.W.2d 2.

Trust Co., supra, 344 Mo. 1150, 130 S.W.2d 611, and Wanstrath v. Kappel, supra, 356 Mo. 210, 201 S.W.2d 327, were decided under the general rule in effect in Missouri in reference to voluntary transfers in contemplation of death with the intent and purpose (on the part of the transferor) to defraud the widow of her marital rights. In those cases the fraudulent intent could not be presumed [21] but was *inferred* from the circumstances, which included gross disproportion between the amount transferred and the amount left to satisfy the widow's marital claims. In the Merz case the ascertainment of intent was aided by evidence of previous efforts of the settlor to find a means whereby he could limit and deprive his wife. In the Kappel case ascertainment of intent was aided by the fact that settlor was suffering from a serious heart ailment and was conscious of impending death. However, in Potter v. Winter, Mo., 280 S.W.2d 27, such a transfer by settlor in ill health (he died three months later) was upheld. The court stated that the physical condition did not "necessarily indicate" that he made the transfer in contemplation of impending death.[22] Circumstances considered in the Potter case were that the settlor had made some prior provision for his widow and that the trust made substantial provision for his widow, although not equal in amount to that which she would have obtained had the indenture not been made; also that the conveyance was not surreptitious and the evidence justified the inference that the wife knew of the terms and had tacitly approved. The decision may possibly have also been influenced by the fact that the second marriage had not been of long duration. The court specifically declared that such a transfer was not legal fraud to be decisively demonstrated by the fact of the transfer and deprivation of the wife; that the voluntary conveyance which may be set aside is one executed with *the intent and purpose to de-feat the wife,* and that the court was concerned *only with settlor's intent.* In view of these cases, and the recent declaration of the Supreme Court in Reinheimer v. Rhedans, Mo., 327 S.W.2d 823, 828, that § 474.150 V.A.M.S. does not attempt to establish or create any new definition of fraud, we must assume that the law in respect to these near-testamentary trusts is concerned with the personal motive and intent of the settlor to defraud his wife rather than with the actual effect and result accomplished, and we must also assume that anticipation of death is still an element to be considered in determining such an intent.

In applying that law to our case, we must consider the circumstances which existed at the time the trust was created on July 29, 1957, over two years before Dr. Fitzpatrick's death. He was then seventy-eight years old, but there is no evidence as to his physical or mental condition at that time. He was in a hospital, but there is nothing shown as to the reason therefor or, if he was confined as a patient, the nature of his ailment; nor is there any evidence of circumstances attending the execution of the instrument except that the transferees secured the presence of the broker who prepared it. We do not know whether this was done in an atmosphere of secrecy, or whether the wife knew about it or was present. In fact we know next to nothing of the facts which would aid us in the wholly unsatisfactory attempt to look into the settlor's mind. It is true that we can look with suspicion upon the act of one of the transferees because of his statement as to what the transferees were trying to do; but under the holdings of our Supreme Court we must concern ourselves with the settlor's mind and his intention and purpose rather than with the intention and purpose of those who benefited from the transfer.

Assuming that we might be able to infer fraudulent intent on the part of the

21. Compare Breshears v. Breshears, supra, 360 Mo. 1057, 232 S.W.2d 460.

22. Compare Weller v. Collier, Mo., 199 S. W. 974, Hastings v. Hudson, supra, 359 Mo. 912, 224 S.W.2d 945, 950.

settlor from the sole fact that a husband, by such transfer, substantially deprives his wife of her marital rights by means of putting a considerable portion of his property out of her (the widow's) reach, we think (after considering Potter v. Winter, supra, and, to some extent, Wahl v. Wahl, supra) the amounts involved are not so disproportionate as to permit that finding here. The doctor's estate amounted to approximately $66,000. The sum transferred to his children constituted approximately one-third of his assets. It is true that his ultimate estate was materially reduced by the income tax claim and the expense attendant thereon; but there is no indication in the evidence that the doctor knew of this claim before he died. Our decision concerning this is not without difficulty. The settlor reserved not only the income for himself but also the way and means to channel the benefit from the property after (and upon) his death in any manner he saw fit. As applied to the wife, it was, in all but name, a testamentary act which deprived the widow of a substantial portion of her marital rights. In the writer's opinion it should be declared to be a fraud on the law; but we are bound by Supreme Court precedent, and, since we must determine the question upon the test of motive and purpose, we are forced to conclude that the evidence does not show the transfer was in fraud of the widow's marital rights.

For the foregoing reasons we believe the judgment of the trial court was erroneous in part. The will should be construed as we have herein stated. The one-third bequest to the widow becomes a charge against the property of the estate, subject to payment of debts and expenses. If there be not sufficient moneys to pay the debts and the widow's bequest, then the residuary bequests and devises will first abate, and thereafter the specific bequests and devises will abate in proportion. The executor may, if necessary, sell and reduce to cash any or all real or personal property in order to effectively carry out the terms of the will.

The judgment is reversed and remanded for entry of decree not inconsistent with this opinion.

HOGAN, J., concurs.

STONE, J., concurs in separate opinion.

STONE, Judge.

Since it is our duty to follow the law as declared by our Supreme Court and since, on the instant record which we must take as it comes to us, the result reached in the principal opinion is, as the author of that opinion carefully explains and points out, in harmony with controlling cases in this jurisdiction, I do not join in the voluntary and gratuitous expression of opinion that the trust under discussion "should be declared to be a fraud on the law." Otherwise, I concur in the principal opinion.